232 F.2d 81
 MIDLAND STEAMSHIP LINE, Inc., as owner of THE Steamer CARMI
A. THOMPSON, Appellant,
v.
THE Tug ARKANSAS, HER ENGINES, BOILERS, etc., and The Great
Lakes Towing Company, Appellee.
 No. 12623.
 United States Court of Appeals Sixth Circuit.
 April 27, 1956.
 
 Russell V. Bleeker, Cleveland, Ohio, for appellant.
 Robert G. McCreary, Jr., Cleveland, Ohio, Arter, Hadden, Wykoff & Van Duzer, Cleveland, Ohio, for appellee.
 Before SIMONS, Chief Judge, and ALLEN and MARTIN, Circuit Judges.
 PER CURIAM.
 
 
 1
 This appeal arises out of a libel of appellant against the Tug Arkansas and its owner, The Great Lakes Towing Company, claiming damages for an accident suffered by appellant's Steamer Carmi A. Thompson on August 28, 1952, when its hull was struck by the Tug Arkansas. The Steamer Thompson was being unloaded at Conneaut, Ohio, and the Tug Arkansas, which had attached its towline to the steamer and was lying under the starboard quarter moved ahead and struck the steamer's hull, coming in contact with one of the propeller blades. Slight hull damage was suffered. No written notice of claim was made by appellant until December, 1952.
 
 
 2
 The pertinent facts as found by the District Court and as shown in the record may be summarized as follows:
 
 
 3
 Following the accident on August 28, 1952, the steamer had continued in operation for the remainder of the Great Lakes navigation season. In March, 1953, when the steamer went into dry dock, the shaft of the propeller was found to have a small fracture consisting of a 'hairline crack.' No formal notice of claim, either written or oral, in regard to the fracture was made by appellant prior to the filing of the libel on August 12, 1953.
 
 
 4
 The keyway of the propeller shaft in which the fracture was found had not been inspected from 1948 to 1953 and no evidence was presented as to when it had been inspected previous to 1948. The engine room log of the Steamer Thompson showed that on September 6, 1947, its propeller struck a submerged object or the bottom, that two loud thumps were heard, and the engine slowed down. The engine room log also showed that on June 17, 1951, the propeller of the Steamer Thompson hit something and a casualty report was made stating the wheel 'hit quite hard.' The District Court found that the striking of the steamer on August 28, 1952, was not of sufficient force to have caused the fracture later discovered in her propeller shaft, but that either of the two previous strikings in 1947 and 1951 could have caused the fracture. The court also found that appellee had been prejudiced in the defense of the action through the failure of appellant to comply with the tariff as to notice of claim.
 
 
 5
 This tariff, which covers 'General Terms and Conditions' in towing, provides that 'Notice of intention to make claim for damage or injury sustained by a vessel being assisted or towed under this tariff must be presented to the Towing Company in writing within a reasonable time (not to exceed thirty days) from the date of the occurrence on which the claim is based * * *,' failing which the claim will be barred. The District Court decided that the towage relationship commenced when the Tug Arkansas took the stern towline from the steamer and made it fast on the tug, that the provisions of the tariff then became effective, and that because of appellant's failure to give written notice of claim as required by the tariff the action was barred. The District Court also decided that the evidence that the fracture of the propeller shaft of the Steamer Thompson was caused by the Tug Arkansas was insufficient and inconclusive and that appellant had failed to sustain its burden of proof. The libel was therefore dismissed.
 
 
 6
 The judgment of the District Court is clearly correct. It is strongly urged by appellant that the court should reasonably have found that the injury to the propeller was caused by the Tug Arkansas in 1952, but appellant's proof was plainly insufficient upon this point. The damage to the steamer's hull was a dent covering an area of about 18 inches, with its fullest depth 1 1/2 inch. The cost of repairs was estimated at $150.00 and the claim for it was waived. The chief engineer of the Thompson, who was on the steamer at the time of the accident, testified that he saw no broken pieces nor damage to the propeller, that 'she was fully intact * * *.' Moreover, the District Court's findings were strongly supported by the evidence of other strikings, one of which caused the engine to slow down. After none of these accidents was an inspection made of the propeller shaft and the result of the strikings was hidden by the hub of the propeller. As held by this court in Lamb v. Interstate S.S. Company, 149 F.2d 914, 916:
 
 
 7
 'If the injury complained of might well have resulted from one of many causes, it is incumbent upon the libellant to produce evidence which will exclude the operation of those causes for which the Master or the crew is under no legal obligation.'
 
 
 8
 The Mason, 2 Cir., 249 F. 718, involved damage from recent breaks and has no bearing here, where it is not shown that the hairline crack was recent. In this connection it is significant that the propeller shaft was not introduced in evidence, although appellee asked for its production, nor was evidence given of any metallurgical examination of the fracture. The inference naturally arises that the physical evidence of the shaft would not have supported appellant's contentions. Patton-Tully Transportation Co. v. Barrett, 6 Cir., 37 F.2d 516, 518.
 
 
 9
 The court was also correct in holding that the action was barred. Appellant's claim that the tariff provision had not gone into effect because the steamer was not ready to leave the dock was properly overruled by the District Court. While the Tug Arkansas was not moving the vessel when the accident occurred, it had been summoned to the Steamer Thompson together with a second tug by the signal which signified that the steamer required the assistance of two tugs. When the towline of the Arkansas was placed upon the stern of the Steamer Thompson, the Thompson, within the meaning of the tariff, was being assisted by the Arkansas to prepare to leave the dock.
 
 
 10
 Also appellant claims that paragraph 16 of the tariff violates public policy, but we agree with the District Court that the provision is valid and enforceable. While a towboat owner may not validly contract against all liability for his own negligence, Bisso v. Inland Waterways Corporation, 349 U.S. 85, 75 S.Ct. 629, 99 L.Ed. 911, common carriers may impose just and reasonable limitation upon their common-law liability not amounting to an exemption from the consequences of their own negligence, Queen of the Pacific, 180 U.S. 49, 21 S.Ct. 278, 45 L.Ed. 419; Georgia, Florida & Alabama Railway Company v. Blish Milling Co., 241 U.S. 190, 196, 36 S.Ct. 541, 60 L.Ed. 948.
 
 
 11
 The findings of the District Court, so far from being clearly erroneous, are clearly correct, and may not be disturbed by this court. McAllister v. United States, 348 U.S. 19, 75 S.Ct. 6, 99 L.Ed. 20.
 
 
 12
 The judgment of the District Court is affirmed.