**UNITED STATES of America and Bruce B. Mack, Revenue Agent, Internal Revenue Service, Petitioners-Appellants,**

v.

**Stanley M. WEINGARDEN, Respondent-Appellee.**

**No. 72-1233.**

United States Court of Appeals, Sixth Circuit.

Argued Dec. 1, 1972.

Decided Feb. 6, 1973.

Carleton D. Powell, Washington, D. C., for petitioners-appellants, Scott P. Crampton, Asst. Atty. Gen., Meyer Rothwacks, John P. Burke, Tax Div., Dept. of Justice, Washington, D. C., on brief; Ralph B. Guy, Jr., U. S. Atty., Detroit, Mich., of counsel.

Stanley M. Weingarden, pro se; Smith, Miro, Hirsch & Brody, Detroit, Mich., of counsel.

Before WEICK, PECK and KENT, Circuit Judges.

WEICK, Circuit Judge.

This appeal is from an order of the District Court denying a petition for the enforcement of summons and to quash the summons which had been issued by Internal Revenue Agent Mack under authority of Section 7602 of the Internal Revenue Code of 1954, 26 U.S.C. § 7602. The District Court, after several hearings, handed down an opinion in which it held that the summons was issued for an impermissible purpose, namely, for the sole purpose of gathering data for a criminal prosecution.[1]

The facts are not controverted. Only one witness, namely Agent Bruce Mack of the Auditing Division of the Internal Revenue Service in Detroit, testified as to the facts.[2] Mack had been assigned to work in the Fraud Section of the District Director's office in Detroit. On or about December 3, 1968, he was directed to audit the tax returns of "Buddy's Rendezvous", a partnership consisting of James Bonacorsi and Katherine Valente, and also the individual returns of the partners and their spouses, for the years 1967 and 1968. The audit was precipitated by information received to the effect that James Valente (husband of Katherine Valente) had reported a theft of $100,000 of his United States Savings Bonds.

In July, 1969, Mack contacted one of the partners and was referred to their accountant, Pitlosh, who permitted Mack to examine his records concerning the taxpayers. Mack determined from such examination that taxpayers' overall financial condition was better than that indicated in their 1967 and 1968 tax returns.

Mack arranged for a second interview with the accountant, at which time he requested copies of the taxpayers' income tax returns for the years 1953 through 1968. The accountant admitted to Mack that he had in his possession pencil copies of some of these returns, but refused to indicate what returns he possessed, stating that he desired to consult an attorney.[3]

On August 13, 1969, Mack issued a summons for the accountant, which required him to produce his copies of income tax returns of taxpayers for the years 1953 through 1968. Thereafter Mack received a telephone call from appellee, Stanley Weingarden, an Attorney at Law, who informed Mack that he had been retained as counsel for the taxpayers; that he now had in his possession the pencil copies of taxpayers' income tax returns which the accountant had retained, but he declined to turn these records over to Mack; and stated that he had received the returns prior to the issuance of the summons that was served on the accountant. Mack then issued a summons for Weingarden requiring the production of the accountant's copies of the income tax returns. On January 8, 1970 another such summons was issued to Weingarden; neither of these summons was complied with.

---

1. 333 F.Supp. 474 (E.D.Mich., 1971).

2. Special Agent Patterson was subpoenaed by taxpayers to bring in the records of his investigation which he was not ordered to produce. He testified that the case presently was assigned to him. His duties were to investigate civil as well as criminal aspects of the case.

3. The Internal Revenue Service had the taxpayers' income tax returns from 1961 through 1968; however, the Service had destroyed the returns for years previous to 1961 as being antiquated. Thus, what Mack really wanted was the returns from 1953 to 1960. Mack needed the earlier returns for comparison with the net worth statement which he desired to prepare in order to determine whether taxpayers had additional sources of income which might explain understatements in the current years' returns. If the earlier tax returns disclosed additional sources of income, taxpayers' current liability for taxes would be reduced. On the other hand, if additional sources of income were not disclosed, taxpayers' liability for current taxes would be increased. The accountant had prepared taxpayers' income tax returns from the time of formation of the partnership in 1953. He prepared the original of each return for filing, provided a carbon copy for taxpayers, and retained a pencil copy for his files.

On March 16, 1970, approximately two months after the second summons was issued for Weingarden, Mack referred the case to the Intelligence Division of the Internal Revenue Service for criminal investigation; however, Mack continued his own investigation, working on net worth calculations for the years 1961 through 1968, which were the years for which he had procured from the Internal Revenue Service the returns of the taxpayers.

On December 15, 1970 Mack filed a petition in the District Court for enforcement of the summons. On January 25, 1971 a hearing was held in the District Court on the petition to enforce the summons. The summons was introduced into evidence and the Court heard testimony (both on direct and cross-examination) from Agent Mack, who had conducted the investigation.

Mack testified that he had received the case as a civil tax assignment, and to check out information as to the stolen United States Savings Bonds; that he never recommended criminal prosecution, and to his knowledge no such recommendation had been made at the time of the hearing on February 8, 1971; that he needed the earlier returns in order to complete his audit; that the original returns for the years 1953 through 1960 had been destroyed; and that he did not commence to prepare his net worth statement until the accountant denied him access to the copies of the income tax returns.

In the Government's brief it is stated that at the hearing on September 7, 1971,—

". . . Government's counsel informed the Court that subsequent to the testimonies given by Mack and Patterson, Patterson completed his investigation and had recommended that criminal proceedings be instituted against taxpayers. He further stated that as of that time no recommendation for prosecution had been made by the Internal Revenue Service to the

Department of Justice, although such a recommendation, in his opinion, would be made."

It is clear to us that Agent Mack's investigation and audit was to determine civil tax liability, and was not for the purpose of criminal prosecution. Mack made demand on the accountant to produce the accountant's copies of the taxpayers' income tax returns, which returns he needed to complete his investigation. The accountant thwarted Mack's efforts to complete his audit by denying him access to his copies of the taxpayers' income tax returns. The accountant then turned over his copies of the returns to the taxpayers' attorney Weingarden.

The District Court did not consider any question of privilege; neither do we. None was asserted. Nor did the District Court base its decision on any constitutional issue, and we do not believe any constitutional issue is involved.

We have decided a number of cases involving summons issued pursuant to Section 7602 of the Internal Revenue Code of 1954, or its predecessor. E. g., United States v. Artman, 435 F.2d 1375 (6th Cir. 1970); United States v. Held, 435 F.2d 1361 (6th Cir. 1970); United States v. Fruchtman, 421 F.2d 1019 (6th Cir. 1970); DiPiazza v. United States, 415 F.2d 99 (6th Cir. 1969); United States v. Michigan Bell Tel. Co., 415 F. 2d 1284 (6th Cir. 1969); Justice v. United States, 365 F.2d 312 (6th Cir. 1966); Peoples Deposit Bank & Trust Co. v. United States, 212 F.2d 86 (6th Cir. 1954). While the above cases do not consider the precise standard for quashing a summons as contended by the Government in the present case, the cited cases make clear the context in which such a contention must be analyzed.

Section 7602 of the Internal Revenue Code of 1954 provides in part:

"For the purpose of ascertaining the correctness of any return . . . determining the liability of

any person for any internal revenue tax . . . the Secretary or his delegate is authorized—(1) To examine any books, papers, records, or other data which may be relevant or material to such inquiry . . . ."

In conjunction with this summons power, the Code provides that the Secretary or his delegate may apply to the District Court wherein the person holding the documents resides, for an order of enforcement. 26 U.S.C. § 7604.

■ While Section 7602 contains on its face no limitation on the issuance of summons so long as the summons sought is related to the correctness or deficiency of any taxpayer's return, the Courts have imposed limitations consistent with other rules and concepts in our legal system.[4]

The predominate limitation imposed by the Courts is the abuse of process concept. In United States v. Powell, 379 U.S. 48, 58, 85 S.Ct. 248, 255, 13 L.Ed.2d 112 (1964), the Court explained:

"It is the court's process which is invoked to enforce the administrative summons and a court may not permit its process to be abused. Such an abuse would take place if the summons had been issued for an improper purpose, such as to harass the taxpayer or to put pressure on him to settle a collateral dispute,[5] or for any other purpose reflecting on the good faith of the particular investigation."

The concept is predicated on the notion that the process of the Court (and its attendant power and authority) should not be used to accomplish a purpose for which it was not intended.[6] See 1 Am.Jur.2d 250, Abuse of Process, Sec. 1.

The essential question is, then, what is the purpose for which a Section 7602 summons was intended?

■ First, it is clear that the Secretary of the Internal Revenue Service has a duty to investigate possible criminal violations in connection with the accuracy (or inaccuracy) of the Intelligence Division of the Service. Internal Revenue Service Organization and Function, Sec. 1118.6, 35 Fed.Reg. 2454. Accordingly, where there is a criminal investigation of a taxpayer incidental to a civil investigation into the correctness of his tax return [7], the Courts require the documents to be produced pursuant to Section 7602. Couch v. United States, 409 U.S. 322, 93 S.Ct. 611, 34 L.Ed.2d 548 (decided Jan. 9, 1973); United States v. Artman, 435 F.2d 1375, 1377 (6th Cir. 1970).

■ Second, it is equally clear that it is not the function of the Internal Reve-

4. Two limitations that are immediately apparent are the Fourth and Fifth Amendments to the Constitution. The seizure of evidence without probable cause to believe that a crime has been committed by the taxpayer is contrary to the Fourth Amendment, while the requirement of a taxpayer to produce evidence against himself for a prosecution is contrary to the Fifth Amendment. See, e. g., Stuart v. United States, 416 F.2d 459 (5th Cir. 1969), where the taxpayer was successful in his contention.

In the present case, however, these constitutional limitations are not applicable. The records sought by the Government are not property of the taxpayers, but are the property of the accountant; they are his personal records. Since the taxpayers have no proprietary or custodial interest in the records, they can assert no constitutional protections in them. Couch v. United States, 409 U.S. 322, 93 S.Ct. 611, 34 L.Ed.2d 548 (decided Jan. 9, 1973); Donaldson v. United States, 400 U.S. 517, 522, 91 S.Ct. 534, 27 L.Ed.2d 580 (1971); United States v. National State Bank & Green, M.D., 454 F.2d 1249, 1252 (7th Cir. 1972).

5. Appellant makes no claim that the summons was being used by Mack to harass or intimidate the taxpayers.

6. Cf., Buchanan v. Wilson, 254 F.2d 849 (6th Cir. 1958).

7. This has been denominated concisely by this Court as the "dual purpose" doctrine. United States v. Held, 435 F.2d 1361 (6th Cir. 1970).

nue Service, an administrative agency, to prosecute violators of the Internal Revenue Code in the Courts; that is the prescribed function of the Justice Department, the prosecutorial branch of the Federal Government.[8] Accordingly, if a taxpayer's case were under the complete control of the Department of Justice (and if that Department were in the process of prosecuting the taxpayer), it would not be permissible for the Department to contact the Internal Revenue Service and request that the Service help to build a stronger case against the taxpayer by obtaining additional documents pursuant to their Section 7602 powers and by handing such documents over to the Department. It would not be permissible simply because the subpoena power was given to the Internal Revenue Service and not to the Department of Justice.[9]

To permit the Department of Justice to use a Section 7602 summons for documents to build its case would be to use the process and authority of the Court in a manner in which it was not intended to be used; it would be an abuse of process.

■ Similarly, where the *sole* purpose for the issuance of a Section 7602 summons is to aid in the prosecution of a taxpayer (even though issued by an agent of the Internal Revenue Service), the effect is that it is the Department of Justice which is in reality using the summons. Accordingly, it would be an abuse of the Court's process to enforce issuance of such summons.

However, the Government would have us close our eyes to this analysis. It states that there is but a single standard for determining whether the Court's process is being abused, namely, the "recommendation for prosecution" standard. It urges that regardless of singular motives of criminal prosecution, the summons is not invalid until there has been an actual recommendation to the Justice Department that the taxpayer be prosecuted.[10]

The Government relies on the recent case of Donaldson v. United States, 400 U.S. 517, 91 S.Ct. 534, 27 L.Ed.2d 580 (1971), and places great weight on the fact that the Court, at the close of its opinion, stated:

"We hold that under § 7602 an internal revenue summons may be issued in aid of an investigation if it is issued in good faith and prior to a recommendation for criminal prosecution." (400 U.S. at 536, 91 S.Ct. at 545)

The weight accorded this language is misplaced.

8. Sec. 1116(3) of the Internal Revenue Service Organization and Functions provides that the Service shall process recommendations for prosecutions through various channels in the Service and then to the Department of Justice.

9. The reason that broad subpoena powers were given to the administrative agency and not to the prosecutorial department lies in our Grand Jury system. Broad investigatory, inquisitory and subpoena powers were given to that body of citizens drawn from the community; like powers were not intended to be in the hands of the prosecutors of crime. See, *e. g.*, Fraser v. United States, 452 F.2d 616 (7th Cir. 1971), where the Court held that the Fourth Amendment was not applicable to a "seizure" of documents by the Grand Jury, although clearly it would be applicable if the Government attempted such a seizure.

On the other hand, an administrative investigation and subpoena is given broad latitude in many respects similar to the latitude of a Grand Jury investigation and subpoena. See Oklahoma Press Pub. Co. v. Walling, 327 U.S. 186, 66 S.Ct. 494, 90 L.Ed. 614 (1946); United States v. DeGrosa, 405 F.2d 926 (3d Cir. 1969).

10. We note initially that this standard has one favorable aspect: it would facilitate for the District Courts the determination of the question whether a Section 7602 summons should be enforced. Such determination would be based upon a single and easily-ascertained fact, i. e., whether there has been a recommendation for prosecution at the time of issuance of the summons.

However, the facility of a standard cannot displace its logic.

Of minor importance is the fact that this language is only dictum of the Court. The precise issue in *Donaldson* was whether the taxpayer could intervene in an enforcement proceeding involving his employer and his employer's records. The Court held that Donaldson had no right to intervene in this proceeding, but continued, stating in effect that Donaldson would not be entitled to have the summons quashed even if he could have intervened. Thus it is not correct, technically, to say that this statement is a "holding" of the Court.

Of major importance is the fact that the Court in *Donaldson* made it clear that—

".  .  . where the sole objective of the investigation [under Sec. 7602] is to obtain evidence for use in a criminal prosecution, the purpose is not a legitimate one and enforcement may be denied." (400 U.S. at 533, 91 S.Ct. at 543). Citing Reisman v. Caplin, 375 U.S. 440, 84 S.Ct. 508, 11 L.Ed.2d 459 (1964).

The Court went further and gave as an example a situation where the "sole objective" test would apply, stating:

"This, of course, would likely be the case where a criminal prosecution has been instituted and is pending at the time of issuance of the summons." (400 U.S. at 533, 91 S.Ct. at 543)

Thus, to state that the Court held in *Donaldson* that the standard for quashing a § 7602 summons is a "recommendation for prosecution" standard, is incorrect. The standard is whether the sole purpose of the issuance of the summons is for criminal prosecution.[11] The

District Court here applied the correct standard.

Applying the "sole purpose" standard, the District Court refused to enforce the summons issued by Agent Mack because —

".  .  . the sole purpose of the investigation by the General [sic] Agent Mack was to gain information for criminal prosecution of the taxpayers." (D.C. 333 F.Supp. at 476).

The Government contends that this finding is clearly erroneous. Fed.R.Civ.P. 52(a).

In our opinion, the finding by the District Court that the sole purpose of the issuance of the summons is for criminal prosecution, is not a finding of fact. It is either a mixed finding of fact and conclusion of law, or it is a finding of the ultimate fact in the making of which is involved legal principles. It is subject to appellate review, and the clearly erroneous rule has no application.

In Cordovan Associates, Inc. v. Dayton Rubber Co., 290 F.2d 858, 860 (6th Cir. 1961), we held:

"Where a finding designated as a finding of fact is not in reality a finding of fact, but is a conclusion of law or a mixed finding of fact and conclusion of law, it is not binding on the appellate court. Bogardus v. Commissioner, 302 U.S. 34, 58 S.Ct. 61, 82 L.Ed. 32; Weible v. United States, 9 Cir., 1957, 244 F.2d 158; Chandler v. United States, 7 Cir., 1955, 226 F.2d 403. Where a finding is of an ultimate fact in the making of which is involved the application of legal prin-

---

11. The manner in which other Circuits have analyzed the *Donaldson* decision is interesting. The guidance provided is at best inconclusive, however.

The Seventh Circuit appears to have accepted the position advanced by the Government, quoting the "holding" of *Donaldson* as it appears at the end of the Court's opinion. United States v. National State Bank and Green, M.D., 454 F.2d 1249, 1252 (7th Cir. 1972).

The Eighth Circuit, on the other hand, has taken two positions with respect to

the *Donaldson* decision. In one case the position advanced by the Government herein was apparently accepted. United States v. Troupe, 438 F.2d 117 (8th Cir. 1971). In a later case the Court was in accord with our analysis, stating:

"There is no indication that the sole objective of the summons is to gather evidence for criminal prosecution. The case therefore comes squarely within the rule of *Donaldson*." United States v. Diracles, 439 F.2d 795, 796 (8th Cir. 1971).

ciples, it is subject to review. Baumgartner v. United States, 322 U.S. 665, 64 S.Ct. 1240, 88 L.Ed. 1525."

Furthermore, the District Court stated that its finding was based in part on the fact that the taxpayers were recommended to the Department of Justice for prosecution subsequent to the issuance of the summons. However, the validity of a Section 7602 summons is to be determined by the facts as they existed at the time of the issuance of the summons. United States v. Held, 435 F.2d 1361, 1364 (6th Cir. 1970); United States v. Giordano, 419 F.2d 564, 568 (8th Cir. 1969).[12]

As before stated, the burden of proof was upon Weingarden to establish by a preponderance of the evidence that the sole purpose of the summons was to obtain evidence for a criminal prosecution. There is nothing in the testimony of Agent Mack, including the inferences properly deducible therefrom, to support that conclusion. Agent Mack's duties were purely auditing and investigatory, to determine an income tax deficiency, if any, and a possible fraud penalty. He did not refer the case to the Intelligence Division for criminal investigation until two months after the second summons had been issued for Weingarden and after he (Weingarden) had declined to furnish the copies of the income tax returns which Mack needed in order to complete his audit.

We realize that the credibility of Mack's testimony was solely for the District Court to determine. United States v. Yellow Cab Co., 338 U.S. 338, 70 S.Ct. 177, 94 L.Ed. 150 (1949). But the District Court made no finding that Mack was not a credible witness.

Considering all of the evidence, together with the inferences to be drawn therefrom, we are of the opinion that one of the purposes of the investigation and audit was to determine civil tax liability and possible fraud penalties.

The judgment of the District Court is therefore reversed and the cause is remanded for enforcement of the summons.

12. The District Court relied on United States v. Kyriaco, 326 F.Supp. 1184 (C.D. Cal.1971) which was a decision on remand from the Supreme Court denying certiorari—

" . . . without prejudice, however, to petitioners' making their respective applications, if they so choose, to the District Court [which previously had granted enforcement of summons] for such relief, if any, as may be appropriate in light of developments occurring since the petition for a writ of certiorari was filed in this Court." 401 U.S. 922, 91 S.Ct. 863, 27 L.Ed.2d 826 (1971).

In the decision on remand the District Court denied enforcement of the summons because subsequent to the issuance of the summons and the order of enforcement a recommendation for criminal prosecution was made to the Justice Department. In its brief the Government stated that its appeal from the District Court's order was dismissed "after compliance by respondent with the summons." We regard the Supreme Court's "without prejudice" order as merely giving the petitioners in that case an opportunity to raise, and to be heard in the District Court on, an issue which arose after the petition for certiorari was filed and which had not been presented previously to the District Court.