**UNITED STATES of America and Richard C. Pfeiffer, Special Agent, Internal Revenue Service, Petitioners,**

v.

**Berry L. KESSLER, Secretary, Brittany Builders, Inc., Respondents.**

**Civ. No. 71-286.**

United States District Court,
S. D. Ohio, E. D.

Sept. 5, 1973.

W. Robinson Watters, Asst. U. S. Atty., Columbus, Ohio, Ralph A. Romano, Tax Div., Dept. of Justice, Washington, D. C., for petitioners.

Joseph F. Dillon, Detroit, Mich., Terry P. Pugh, Columbus, Ohio, for respondents.

OPINION AND ORDER

CARL B. RUBIN, District Judge.

This matter is before the Court on the United States' application for judicial enforcement of an Internal Revenue Service summons, issued pursuant to Section 7602 of the Internal Revenue Code of 1954, 26 U.S.C. § 7602. The factual circumstances surrounding the issuance of that summons, and the nature of the investigations being conducted by the Service, were set forth in some detail in our opinion in United States v. Kessler, 338 F.Supp. 420 (S.D.

Ohio E.D.1972) and will not be repeated at this time. That decision was subsequently reversed by the Sixth Circuit on a procedural matter having nothing to do with the merits,[1] and the case was remanded for further discovery and evidentiary hearing. See United States v. Kessler, 474 F.2d 995, 996 (C.A. 6 1973); see also Donaldson v. United States, 400 U.S. 517, 91 S.Ct. 534, 27 L. Ed.2d 580 (1971); United States v. Powell, 379 U.S. 48, 85 S.Ct. 248, 13 L. Ed.2d 112 (1964).

■ The mandate of the Circuit Court has now been satisfied. Discovery was undertaken and an evidentiary hearing held. Both from the evidence presented at such hearing and the developing post-Donaldson case law,[2] there

appeared little reason to alter the original decision to grant enforcement of the summons. The respondent, neither by evidence produced via depositions nor through evidence adduced in open court at the evidentiary hearing, was able to carry his burden by a preponderance of the evidence on the points in dispute. See United States v. Powell, *supra* at 58, 85 S.Ct. at 248; United States v. Weingarden, *supra* at 461. The Sixth Circuit in *Weingarden* held that ". . . the burden of proof [is upon the respondent] to establish by a preponderance of the evidence that the sole purpose of the summons was to obtain evidence for a criminal prosecution." This, it may be added parenthetically, is perfectly consistent with the *Powell* rule.[3] Reluctantly, however, for

---

1. The Court of Appeals noted in passing in its remand order that: "It may very well be that the District Court's enforcement of the summons is correct under the circumstances of this case in view of the defenses asserted." United States v. Kessler, 474 F.2d 995, 996 (C.A.6 1973).

2. *See, e. g.*, Couch v. United States, 409 U.S. 322, 93 S.Ct. 611, 34 L.Ed.2d 548 (1973); United States v. Weingarden, 473 F.2d 454 (C.A.6 1973); United States v. Cleveland Trust Co., 474 F.2d 1234 (C.A.6 1973); United States v. Billingsley, 469 F. 2d 1208 (C.A.10 1972); United States v. Schwartz, 469 F.2d 977 (C.A.5 1972); United States v. National State Bank, 454 F.2d 1249 (C.A.7 1972); United States v. Troupe, 438 F.2d 117 (C.A.8 1971).

3. While the question of what the respondent's burden is in the context of Section 7602 evidentiary hearings is now well settled, the question of just what issues he may appropriately attempt to prove by such a burden remains troublesome.

The Supreme Court held in *Donaldson* ". . . that under § 7602 an internal revenue summons may be issued in aid of an investigation if it is issued in good faith and prior to a recommendation for criminal prosecution." 400 U.S. at 536, 91 S.Ct. at 545. We originally held in United States v. Kessler that the *Donaldson* holding was in the conjunctive and that both aspects required determination by the District Court. 338 F.Supp. at 426 n.5. Some support for this view was obtained in Couch v. United States, 409 U.S. 322, 326, n.8, where the Court reiterated the *Donaldson* holding quoted above and noted that: "*Donaldson* cautioned

only that the summons be issued in good faith and prior to a recommendation for criminal prosecution . . . . *Neither of those conditions* is successfully challenged here." (emphasis supplied)

The present rule in the Sixth Circuit is at best uncertain. The Court in *Weingarden* (decided on February 6, 1973) specifically distinguished the bipartite holding of *Donaldson*, noting the ". . . weight accorded this language is misplaced" and went on to hold that the ". . . standard is whether the sole purpose of the issuance of the summons is for criminal prosecution." 473 F.2d at 459, 460.

It might well be that the thrust of the Court's opinion in that case was to give judicial definition to the first prong of the *Donaldson* test and not to obliterate the necessity of District Courts' further inquiring into the issue of good faith. This might be gleaned from the *Weingarden* Court's interest in specifically rejecting the "recommendation" standard for the "sole purpose" standard. In this regard, *compare Weingarden, supra* at 461 n.12 and its treatment of United States v. Kyriaco, 326 F.Supp. 1184 (C.D.Cal.1971) *with* United States v. Billingsley, 469 F.2d 1208, 1209 (C.A.10 1972) (which follows *Kyriaco* and adopts a very rigid "recommendation" standard). It may further be inferred because Judge Weick, who wrote *Weingarden*, sat on the panel which by a *per curiam* order decided United States v. Cleveland Trust, 474 F.2d 1234 (C.A.6 1973) (opinion handed down on March 7, 1973). In *Cleveland Trust*, the Court plainly indicates that the inquiry under *Donaldson* is two-pronged but that in certain instances the good faith prong may be considered as a

the reasons which follow below, the Court must find that petitioners have prevented the very decision sought by them.

Prior to the evidentiary hearing, counsel for the respondent issued subpoenas *duces tecum* against several agents of the Internal Revenue Service, including Fleming Deal, K. L. Leggett, Richard C. Pfeiffer, David Smucker, and the District Director. These subpoenas sought, *inter alia*, these agents' working papers, fraud referral reports, and files as they pertained to tax investigations purportedly being conducted into the affairs of respondent, Dr. and Mrs. Carl Neufeld, and various corporate entities, including Brittany Builders, in which Kessler had an interest. The Court did not rule immediately on the enforceability of these subpoenas but instead put the respondent to his burden of producing evidence within his control.

At the close of the evidentiary hearing, we requested that the petitioner United States submit to the Court, for *in camera* inspection, the material sought by respondent through his subpoenas. It was understood that if these materials failed to support the respondent's contentions, the record would remain closed; the I.R.S. summons would be quashed or enforced on the strength of the record as it stood at the close of the hearing; and the subpoenaed

records would be returned to petitioner without being viewed by the respondent. If on the other hand these materials in any way supported respondent's claim, we suggested that the subpoenas would be enforced and the record of the evidentiary hearing reopened for the taking of further evidence derived from petitioner's files.

Counsel for the petitioner noted an immediate objection to the proposed procedure and argued that it was possibly in violation of I.R.S. policy. However, the hearing was adjourned and petitioner's counsel promised that the Court would be promptly notified as to the position of the Office of the General Counsel of I.R.S.

By letter dated August 21, 1973, this Court was informed by Scott P. Crampton, Assistant Attorney General of the Tax Division of the Department of Justice, and by John J. McCarthy, Chief of the General Litigation Section of that Division, that the Court's proposed procedure was, because of departmental policy, unacceptable to the petitioner.[4]

The Department of Justice is assuredly entitled to promulgate and abide by whatever policies it may, in its wisdom, deem necessary to the efficient discharge of its functions. It is not, however, entitled to Court sanction when such policies depart from basic notions of due process and full disclosure. As Justice White noted recently in Stanley

---

dependent function of the "sole purpose" test. *Id.* at 1235–1236.

In any event, regardless of the interpretation given the applicable judicial touchstone in our circuit, respondent's claims must be cognizable in this proceeding. As we interpret his somewhat rambling and disordered moving papers and pleadings, he is claiming that the sole purpose of the I.R.S.'s summons against Brittany Builders, and in fact their entire investigation of the Neufelds, is to obtain evidence that may later be used against him at a criminal prosecution. He then argues from that assumption, alternatively, that I.R.S.'s denial of its true investigatory purpose is an evidence of its lack of good faith. So even assuming, *arguendo*, that we need not determine whether the I.R.S. is conducting its investigation in good

faith, we must certainly, under any conceivable *Donaldson* standard, allow respondent to present his evidence on sole purpose, which past a point, begins to bear on good faith as well. See *Cleveland Trust, supra* at 1236.

4. Petitioner's counsel respectfully advised the Court in said letter that ". . . the Commissioner of Internal Revenue declines to make said records available for in camera inspection. To do otherwise would set an undesirable precedent which would undoubtedly be invoked in the numerous summons enforcement cases presently pending, and to be instituted in the future, in the various federal district courts. In addition, we believe such disclosures might well prejudice the Government in future litigation on the merits of substantive tax issues."

v. Illinois, 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972):

> The establishment of prompt efficacious procedures to achieve legitimate state ends is a proper state interest worthy of cognizance in constitutional adjudication. But the Constitution recognizes higher values than speed and efficiency. Indeed, one might fairly say of the Bill of Rights in general, and the Due Process Clause in particular, that they were designed to protect the fragile values of a vulnerable citizenry from the overbearing concern for efficiency and efficacy that may characterize praiseworthy government officials no less, and perhaps more, than mediocre ones (footnotes omitted).

405 U.S. at 656, 91 S.Ct. at 1215; also see Weaver v. O'Grady, 350 F.Supp. 403 (S.D.Ohio E.D.1972) and cases cited at 411. It is thus our unique and particularly juridical task to see that precious individual rights are not trampled in the federal bureaucracy's headlong scramble towards ever higher levels of efficiency.

The Supreme Court was careful to note in *Donaldson, supra* at 522–523, 535–536, that the only reason constitutional rights under the Fourth and Fifth Amendments are not squarely jeopardized by every Section 7602 summary proceeding is because the Government in these cases is, in effect, warranting that it is proceeding in good faith and prior to a formal recommendation for criminal prosecution. *Cf.* United States v. Billingsley, *supra* at 1210. But in the instant case, where the respondent has directly placed in issue the *bona fides* of petitioner's conduct, as they bear on *Donaldson* standards, the Government's response is, surprisingly, to refuse to allow this Court to conduct an *in camera* inspection of its investigatory files which may bear directly upon this issue.

We are at a loss to understand the logical underpinnings of petitioner's asserted position. If respondent's claims are totally without merit, then what has petitioner to lose by consenting to this Court's inspection of its files? Federal courts are fairly adept at this type of procedure, having practiced it in a broad spectrum of cases, both criminal, *see* United States v. United States District Court, 407 U.S. 297, 92 S.Ct. 2125, 32 L.Ed.2d 752 (1972); Jencks v. United States, 353 U.S. 657, 77 S.Ct. 1007, 1 L. Ed.2d 1103 (1957); and civil, *see* New York Times Co. v. United States, 403 U. S. 713, 91 S.Ct. 2140, 29 L.Ed.2d 822 (1971). This procedure is one of the basic functions of federal courts under evolving principles of civil discovery as embodied in Rules 26 through 37 of the Federal Rules of Civil Procedure and as followed in this judicial district and elsewhere in too many cases to require citation.[5]

On the other hand, if respondent's claims are meritorious, if only in part, and if this became apparent during an *in camera* inspection of the Government's files then, at the very least, petitioner would not be entitled to obtain judicial assistance for the enforcement of its summons. See *Donaldson, supra* at 531–536; United States v. Powell, *supra*

---

5. We observe that the executive departments of our government routinely confide to courts highly sensitive data to justify, under authorized warrant procedures, searches, seizures and electronic surveillance. See United States v. United States District Court, *supra;* Almeida-Sanchez v. United States, 413 U.S. 266, 93 S.Ct. 2535, 37 L.Ed.2d 596 (1973). The only reason for not doing so in this case is petitioner's fear of setting a "bad precedent" for subsequent tax investigations. See n. 4. However, the petitioner does not contend of this opinion that its investigatory file is in any way privileged because it has been compiled by an executive department of government. Nor does it attempt to invoke, as it could not reasonably be expected to, the doctrine of separation of powers. See In re Grand Jury Proceedings, 360 F.Supp. 1 (D.D.C.1973) (Sirica, C.J.); Marbury v. Madison, 1 Cranch 137, 2 L.Ed. 60 (1803); Youngstown Sheet & Tube Co. v. Sawyer, 343 U.S. 579, 72 S.Ct. 863, 96 L. Ed. 1153 (1952); Aaron v. Cooper, 357 U.S. 566, 78 S.Ct. 1189, 2 L.Ed.2d 1544 (1958). Also see the fine discussion and cases gathered on this issue in Committee for Nuclear Responsibility, Inc. v. Seaborg, 463 F.2d 788 (D.C.Cir. 1971).

at 57–58.[6] If this were, in fact, the case, then the petitioner's agents would have committed a fraud upon the Court and would be liable for abuse of process and subject to the imposition of contempt powers.

We note with great reluctance that, in view of petitioner's present position, the universal teachings of human nature and the common law of evidence tend to make the latter, unhappily, more likely than the former. As the great Wigmore has commented on the operation of this inference:

> The failure to bring before the tribunal some circumstance, document, or witness, when either the party himself or his opponent claims that the facts would thereby be elucidated, serves to indicate, as the most natural inference, that the party fears to do so, and this fear is some evidence that the circumstance or document or witness, if brought, would have exposed facts unfavorable to the party. These inferences, to be sure, cannot fairly be made except upon certain conditions . . . [b]ut the propriety of such an inference in general is not doubted.

2 Wigmore, Evidence § 285 at 162 (3d ed. 1940); *see also* McCormick, Evidence § 77 at 155–156 (2d ed. 1972); Armory v. Delamirie, 1 Strange 505

(1722); Halliday v. United States, 315 U.S. 94, 62 S.Ct. 438, 86 L.Ed. 711 (1942); Interstate Circuit v. United States, 306 U.S. 208, 59 S.Ct. 467, 83 L. Ed. 610 (1939); Phillips v. Chase, 201 Mass. 444, 480, 87 N.E. 755 (1909), *writ of error dism'd* 216 U.S. 616, 30 S.Ct. 577, 54 L.Ed. 639 (1910).

This rule has been recognized in its various permutations by the Sixth Circuit, both in tax cases, *see* Wilkie v. C.I.R., 127 F.2d 953 (C.A.6 1942), *cert den.* 317 U.S. 659, 63 S.Ct. 58, 87 L. Ed. 530 (inference applied against taxpayer where he refuses to supply records which supposedly support his claim); Mayson v. C.I.R., 178 F.2d 115 (C.A.6 1949) (inference applied against government where it failed to produce expert witness as to reasonableness of certain salaries); in certain admiralty situations, *see* O. F. Shearer & Sons v. Cincinnati Marine Service, Inc., 279 F.2d 68 (C.A.6 1960); Midland S.S. Line, Inc. v. The Arkansas, 232 F.2d 81 (C.A.6 1956); Austerberry v. United States, 169 F.2d 583 (C.A.6 1948); and in civil cases generally, *see* Shuell v. London Amusement Co., 123 F.2d 302 (C.A.6 1941). This is also the rule followed by almost all the other circuits in tax litigation and in general where the government is a party and has exclusive control of potentially relevant evidence.[7]

---

6. In *Powell* the Court was scrupulous to observe that:
   > It is the court's process which is invoked to enforce the administrative summons and a court may not permit its process to be abused. Such an abuse would take place if the summons had been issued for an improper purpose, such as to harass the taxpayer or to put pressure on him to settle a collateral dispute, or for any other purpose reflecting on the good faith of the particular investigation.

7. *See, e. g.,* Glimco v. C. I. R., 397 F.2d 537 (C.A.7 1968), *cert. den.* 393 U.S. 981, 89 S.Ct. 452, 21 L.Ed.2d 442 (1968); Malat v. C. I. R., 302 F.2d 700 (C.A.9 1962), *cert. den.* 371 U.S. 934, 83 S.Ct. 308, 9 L.Ed.2d 271 (1962); Hoffman v. C. I. R., 298 F.2d 784 (C.A.3 1962); *see also* Evis Manufacturing Co. v. F. T. C., 287 F.2d 831 (C.A.9 1961), *cert. den.* 368 U.S. 824, 82 S.Ct. 43, 7 L.Ed. 2d 28 (1961); United States v. Johnson, 288

F.2d 40 (C.A.5 1961) (under Federal Tort Claims Act). For an excellent and comprehensive review of this "adverse inference rule" and its application to public agency litigation, *see* International Union (UAW) v. N. L. R. B., 148 U.S.App.D.C. 305, 459 F.2d 1329 (1972) (Skelly Wright, J.) The rule in Ohio appears to be badly split but has recently begun to lean significantly towards the traditional common law view. *Compare* State ex rel. Raydel v. Raible, 117 N.E.2d 480, 69 O.L.A. 356, 40 A.L.R.2d 950 (1954), *appeal dism'd.* 162 Ohio St. 74, 120 N.E.2d 590; Cleveland Concession Co., 84 Ohio App. 1, 83 N.E.2d 818 (1949) *and* McLaughlin v. Massachusetts Indemnity Co., 85 Ohio App. 511, 84 N.E.2d 114 (1949), all of which favor the above rule, *with* Martin v. Heintz, 126 Ohio St. 227, 184 N.E. 852 (1933) *and* Hubbard v. Cleveland, C. & C. Highway, 81 Ohio App. 445, 76 N.E.2d 721 (1948), which reject it.

We are not persuaded that our insistence that the I.R.S. reveal their file for our *in camera* inspection as the *quid pro quo* for the judicial enforcement of their summons will set a bad precedent for all similar Section 7602 cases in the future. While we do not believe that respondent carried the mandated burden on the strength of his own evidence, neither can we conclude that his efforts to obtain access to the government's investigative file constitutes a mere fishing expedition. The respondent has presented some evidence that at times the line between the I.R.S. investigation of Kessler's personal records and its investigation of the records he held as corporate secretary for Brittany Builders, Inc., became blurred and indistinct. He has further produced some evidence that the government, at least in the initial stage of this investigation, thought it wise to place Kessler, personally, on notice of his Fifth Amendment rights, see United States v. Kessler, 338 F.Supp. 420, 426–427 n. 6, and that Special Agent Pfeiffer told Dr. Neufeld that the true target of his investigation was Kessler. There has also been some evidence of minor violations of the regulations and internal operating procedures of the I.R.S.

We are persuaded that an acquiescence with petitioner's position would prevent any inquiry, however meritorious, into the good faith of any investigation. As we have above indicated, respondent's evidence when taken alone would not be sufficient to carry the burden required to quash the instant I.R.S. summons. It is sufficient, however, to justify, upon respondent's request, an *in camera* inspection of the government's investigatory file by this Court. When this request is denied, the above noted evidence, when considered in conjunction with the inference that arises from such refusal, does constitute sufficient justification for the Court to deny petitioner the assistance of its process for the enforcement of the I.R.S.

summons. See United States v. Weingarden, *supra* at 458–459.

This matter cannot be considered in a vacuum. The reluctance of departments of government in 1973 to make records available to courts is not limited to the Internal Revenue Service. While we refrain from comment on the merits of the I.R.S. policy, we do hold that where, as here, the petitioner is entitled to judicial enforcement of an I.R.S. summons only when it has issued it in good faith and prior to a recommendation for criminal prosecution; and where the respondent produces some evidence adverse to the government on these issues and seeks discovery of the government's records for additional evidence bearing upon these points and where the government refuses, without an adequate justification, to produce the sought-after records for *in camera* inspection by the District Court, such actions give rise to the inference that the government is withholding evidence favorable to respondent's contentions and it therefore becomes wholly inappropriate for a court to lend its process to the enforcement of such a summons.

It must therefore necessarily follow that the Section 7602 summons issued in the case at bar against Berry L. Kessler, Secretary of Brittany Builders, Inc., fails to conform to the requirements of Donaldson v. United States, 400 U.S. 517, 91 S.Ct. 534, 27 L.Ed.2d 580 (1971). It is therefore improper and accordingly the same must be and is hereby quashed. Consequently, this action is dismissed.

Deciding as we have and assuming that the agents of petitioner to whom the subpoenas *duces tecum* were directed failed to comply therewith because of the policy of the Department of Justice as set forth in n. 4 above, it is not necessary to consider respondent's motions for orders to show cause why those same agents should not be held in contempt of court.

An agreed entry in conformity with the views expressed herein shall be submitted within fifteen (15) days of the filing date herein. See United States v. Indrelunas, 411 U.S. 216, 93 S.Ct. 1562, 36 L.Ed.2d 202 (1973).

It is so ordered.