911 F.2d 732
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Paul E. JONES, Plaintiff-Appellant,
v.
UNITED STATES of America, Defendant-Appellee.
 No. 89-6512.
 United States Court of Appeals, Sixth Circuit.
 Aug. 16, 1990.
 
 Before KENNEDY, BOGGS and SUHRHEINRICH Circuit Judges.
 PER CURIAM:
 
 
 1
 This case arises out of the issuance of summonses by the Internal Revenue Service (IRS) directed to Janice Groves, a certified public accountant and representative of appellant, Paul E. Jones, and to Laramie Leatherman, appellant's attorney, directing them to appear before a special agent to give testimony and produce examination books, records, papers and other data pertaining to the tax liability of appellant for the years 1981, 1982 and 1983. Appellant brought a motion to quash the summonses; the District Court denied this motion.
 
 
 2
 Appellant argues that the District Court improperly assigned the burdens of proof in the present case and that the enforcement of the summonses constituted an abuse of process. We find that the District Court properly denied appellant's motion to quash the summonses. Accordingly, we AFFIRM the judgment of the District Court.
 
 
 3
 In early 1984, Leo Eggleton, a revenue agent of the Bowling Green office of the Louisville District of the IRS, advised appellant that Eggleton had been assigned to perform an audit of appellant's income tax return for the 1982 calendar year. During an initial meeting at appellant's residence on April 11, 1984, Eggleton reviewed appellant's bank statements, deposit slips, canceled checks and other records for the 1982 calendar year. Eggleton was of the opinion that a substantial amount of taxable income had been omitted from appellant's return.
 
 
 4
 The next meeting occurred on April 18, 1984 between appellant, his accountant, Janice Groves, and Eggleton. Immediately prior to that time, Groves had completed an amended 1983 federal income tax return for appellant reflecting an increase in taxable income of $60,783 over what he had shown in his original return.
 
 
 5
 At the second meeting, Eggleton stated his conclusion that substantial amounts of income had been omitted from appellant's 1982 return. When he asked for information about the 1983 return, Groves advised him that appellant had recently filed an amended 1983 return. At that meeting, Eggleton was provided with copies of both the original and amended 1983 returns.
 
 
 6
 The next meeting was held on May 1, 1984, and Eggleton was furnished with many records and other information he had requested relating to the 1982 and 1983 returns. Eggleton interrogated Jones at the first three meetings regarding the source of his deposits, his use or receipt of cash and other matters bearing on his taxable income.
 
 
 7
 After the May 1st meeting, Eggleton inquired whether Groves would mind if Eggleton's supervisor, Carl Pullen, met with the taxpayer, Groves and Eggleton. This was agreed to and a meeting was held on May 17, 1984. At that time, Groves had prepared schedules reflecting her calculations of the adjustments to the taxpayer's returns. Pullen furnished Groves with a copy of a spread sheet reflecting specific proposed adjustments to appellant's taxable income for all three years. Eggleton questioned appellant again concerning the source of his deposits, income and expenses, and his use or receipt of cash. Subsequently, Groves concluded that Eggleton had been pursuing a criminal investigation and recommended that appellant hire legal counsel, which was done.
 
 
 8
 The District Court noted that the United States is entitled to enforce its Internal Revenue summonses if it makes a prima facie case showing that enforcement is proper and if the taxpayer does not show that the United States acted in a fraudulent and deceptive manner which rose to the level of bad faith. The court found that appellant did not meet his burden, which was a heavy one, of showing that the revenue agents obtained evidence from him through fraud, trickery and deceit. Thus the court ordered that the administrative summonses be enforced.
 
 
 9
 Appellant argues that his motion to quash the summonses should have been granted because: (1) the United States failed to establish a prima facie case for the enforcement of the summonses; and (2) enforcement of the summonses would constitute an abuse of process because the evidence of record demonstrates that the IRS examination was not conducted in good faith. We consider each argument in turn.
 
 
 10
 Appellant first argues that the District Court erred in stating that appellant has a "heavy" burden of proof because the United States has the initial burden of proof. The District Court properly set forth the burdens of proof when it stated that "the United States is entitled to enforce its Internal Revenue summonses if it makes a prima facie case showing that enforcement is proper and if the taxpayer does not show that the United States acted in a fraudulent and deceptive manner which rose to the level of bad faith." As discussed below, once the government makes a prima facie case showing that enforcement is proper, the taxpayer, in order to quash a summons, has the burden of showing that enforcement of the summons would constitute an abuse of process. It is this burden that the District Court found that appellant failed to meet.
 
 
 11
 This Court has listed the requirements for establishing a prima facie case for the enforcement of an administrative summons. The government must demonstrate that:
 
 
 12
 (1) the investigation has a legitimate purpose; (2) the summoned materials are relevant to that investigation; (3) the information sought is not already within the IRS's possession; and (4) the IRS has followed the procedural steps outlined in 26 U.S.C. Sec. 7603.[1]
 
 
 13
 United States v. Will, 671 F.2d 963, 966 (6th Cir.1982) (footnote added) (citing United States v. Powell, 379 U.S. 48, 57-58 (1964)).
 
 
 14
 In Will, this Court further stated, "Once this showing is made, the burden shifts to the taxpayer to demonstrate that enforcement of the summons would be an abuse of the court's process." Id. Elaborating on the abuse of process concept, this Court noted:
 
 
 15
 "Such an abuse would take place if the summons had been issued for an improper purpose, such as to harass the taxpayer or to put pressure on him to settle a collateral dispute, or for any other purpose reflecting on the good faith of the particular investigation."
 
 
 16
 Id. at 967 (quoting Powell, 379 U.S. at 58). This Court further noted, "Moreover, if criminal prosecution has been recommended by the IRS agent before issuance of the summons, or if the summons is being issued in aid of a solely criminal investigation, determined by looking at the institutional posture of the IRS, the summons will not be enforced." Id. (citing United States v. LaSalle National Bank, 437 U.S. 298, 318 (1978)).
 
 
 17
 Appellant argues that the government has the burden of proving that it acted in good faith. Appellant asserts that in order to meet the first requirement set forth in Powell --a demonstration that the investigation has a legitimate purpose--the government must demonstrate that the IRS and its agents or employees engaged in the investigation in good faith. Appellant cites United States v. LaSalle National Bank, 437 U.S. 298 (1978), and Donaldson v. United States, 400 U.S. 517 (1971), for this assertion. LaSalle and Donaldson, however, merely refer to the Powell requirements, including the requirement that "a court may not permit its process to be abused," Powell, 379 U.S. at 58, as a good-faith requirement. In LaSalle, the Court stated:
 
 
 18
 In Powell, the Court announced several elements of a good-faith exercise:
 
 
 19
 "[The Service] must show that the investigation will be conducted pursuant to a legitimate purpose, that the inquiry may be relevant to the purpose, that the information sought is not already within the Commissioner's possession, and that the administrative steps required by the Code have been followed.... [A] court may not permit its process to be abused. Such an abuse would take place if the summons had been issued for an improper purpose, such as to harass the taxpayer or to put pressure on him to settle a collateral dispute, or for any other purpose reflecting on the good faith of the particular investigation."
 
 
 20
 LaSalle, 437 U.S. at 313-14 (quoting Powell, 379 U.S. at 57-58). Contrary to appellant's assertion, LaSalle and Donaldson do not state that in order to demonstrate that the investigation has a legitimate purpose, the government must show that it acted in good faith. Rather, these cases state that as a whole, the Powell requirements comprise a requirement that the government act in good faith. The government does not have the sole burden of proof with respect to this good-faith inquiry. As stated above, the government must establish a prima facie case for the enforcement of an administrative summons; then the burden shifts to the taxpayer to demonstrate that enforcement of the summons would be an abuse of the court's process. Will, 671 F.2d at 966. The District Court did not err in assigning these burdens to the parties.
 
 
 21
 Appellant next argues that the summonses issued in the present case were issued for an improper purpose and thus the enforcement of the summonses constitutes an abuse of process. The burden of so demonstrating falls on the appellants. Id. With respect to what constitutes an abuse of process, the Supreme Court in Powell stated:
 
 
 22
 Such an abuse would take place if the summons had been issued for an improper purpose, such as to harass the taxpayer or to put pressure on him to settle a collateral dispute, or for any other purpose reflecting on the good faith of the particular investigation.
 
 
 23
 Powell, 379 U.S. at 58.
 
 
 24
 Appellant argues that Eggleton's actions constituted affirmative acts of deceit, trickery and misrepresentation, which comprise bad faith. The District Court concluded that appellant had not met his burden of showing that the revenue agents were guilty of fraud, trickery and deceit.
 
 
 25
 In order to succeed on appeal, appellant must show that the trial court was clearly erroneous[2] in finding that appellant has not shown by clear and convincing evidence that the IRS agents made material misrepresentations about the nature of their inquiry. See United States v. Caldwell, 820 F.2d 1395, 1399 (5th Cir.1987); Nuth, 605 F.2d at 234. We agree with the Fifth Circuit that:
 
 
 26
 "the mere failure of a revenue agent (be he regular or special) to warn the taxpayer that the investigation may result in criminal charges, absent any acts by the agent which materially misrepresent the nature of the inquiry, do not constitute fraud, deceit and trickery. Therefore, the record here must disclose some affirmative misrepresentation to establish the existence of fraud, and the showing must be clear and convincing....
 
 
 27
 Silence can only be equated with fraud where there is a legal or moral duty to speak or where an inquiry left unanswered would be intentionally misleading."
 
 
 28
 United States v. Tweel, 550 F.2d 297, 299 (5th Cir.1977) (footnote omitted) (quoting United States v. Prudden, 424 F.2d 1021, 1033 (5th Cir.), cert. denied, 400 U.S. 831 (1970)).
 
 
 29
 In her deposition, Groves stated that she never asked Eggleton whether the case would or would not be referred for criminal investigation and that Eggleton did not say explicitly that the case would not be referred but that his actions indicated that the case would not be. These actions include Eggleton's continuation of the audit and expansion of the audit to 1981 and 1983 after Eggleton was aware of the understatement in 1982, his request for additional information "related to the civil law," his failure to seem alarmed by the amended 1983 return, and his assurance that his supervisor's presence was not unusual and was routine. Eggleton testified that he was never asked whether a criminal investigation was ongoing and that he never told Groves or appellant that he would not refer the case to the Criminal Investigation Division. Eggleton denied having stated that having his supervisor with him was nothing unusual and was routine; he testified that he might have told Groves and Jones that having his supervisor with him was standard procedure. The trial court appears to have found the testimony of Eggleton to be more credible than that of Groves with respect to this statement. Appellant has not persuaded this Court that such a finding is clearly erroneous. The testimony of Groves and Eggleton indicates that there was no inquiry which if left unanswered would be intentionally misleading. Further, there was no legal or moral duty to speak, for "the mere failure of a revenue agent ... to warn the taxpayer that the investigation may result in criminal charges, absent any acts by the agent which materially misrepresent the nature of the inquiry, do not constitute fraud, deceit and trickery." Tweel, 550 F.2d at 299 (quoting Prudden, 424 F.2d at 1033). Thus in the present case, silence cannot be equated with fraud. Further, the record does not disclose an affirmative misrepresentation. Thus the District Court properly found that appellant failed to meet his burden of demonstrating that the government's actions constituted fraud, deceit and trickery.
 
 
 30
 Appellant also argues that the discrepancies between the testimony of Eggleton and Pullen establish a lack of good faith on the part of the IRS. We do not believe that any apparent discrepancies between the testimony of Eggleton and Pullen indicate that an affirmative misrepresentation was made in this case; certainly the trial court was not clearly erroneous in finding that none was made. The testimony with the alleged discrepancies involved the issue of when the agents first believed the case was one involving fraud. With respect to this issue, the trial court found that although Eggleton was of the opinion that the Jones case was one of potential fraud prior to May 17, that fact did not convert the civil investigation into a criminal one. The court stated, "While the revenue agent Eggleton was suspicious of the fraud as early as April 18, 1984, the case was not, in fact, referred to the criminal investigation division until July 12, 1984." Neither the testimony of Eggleton nor that of Pullen is at odds with these findings.
 
 
 31
 Appellant next analogizes the present case to Tweel and SEC v. ESM Government Securities, Inc., 645 F.2d 310 (5th Cir.1981). Tweel found that a silent misrepresentation was material and intentionally misleading where the taxpayer's accountant specifically asked whether a special agent was involved in the investigation. The agent did not disclose that the audit was not routine but was conducted at the request of the Organized Crime and Racketeering Section of the Department of Justice. Tweel differs from the case before us in that Tweel's accountant specifically inquired about the nature of the investigation and in that the audit was requested by the Justice Department. See United States v. Powell, 835 F.2d 1095, 1099 (5th Cir.1988) ("[I]n Tweel, ... the civil audit was initiated with criminal overtones. Its genesis implicated criminality." ). It is conceded here that the audit began as a civil audit.
 
 
 32
 ESM Government Securities differs from the present case as well. In that case, the court found an abuse of process where an SEC investigator informed ESM that in addition to performing a routine audit of ESM, he would like ESM to provide him with a basic education in the government securities market. With the belief that it was merely educating the agent, ESM turned over various documents to him. No similar affirmative misrepresentation was made in the present case. Although the examination involved in the present case ultimately developed into a criminal investigation, the agents were not required to alert the taxpayer or his accountant of that possibility during the time in question. See Powell, 835 F.2d at 1099 ("[A]lthough [the agent's] audit grew into a criminal investigation, we have held that revenue agents have no duty to inform taxpayers that the agents' investigations might result in criminal charges." ).
 
 
 33
 Appellant next argues that the District Court erred in finding that Eggleton and Pullen had not violated a provision of the Internal Revenue Manual (Manual) providing that a revenue agent must suspend his civil investigation upon discovering what he believes to be a firm indication of fraud.[3] We agree with the District Court that the agents did not violate the Manual provision by not referring the case to the Criminal Investigation Division prior to May 17, 1984. Appellant has not convincingly demonstrated that the trial court was clearly erroneous in finding that the agents did not believe there to have been a firm indication of fraud prior to that date.
 
 
 34
 The District Court also found that even if a violation had occurred, the failure of the IRS to follow the Manual's procedures conferred no substantive rights on Jones. Appellant does not contest this conclusion, but rather argues that a violation of the Manual is a factor to be considered in determining whether the government acted in bad faith. Because we believe that the District Court's finding that the agents did not violate the Manual is not clearly erroneous, we need not reach this issue.
 
 
 35
 Appellant also argues that by citing Nuth the District Court erroneously held Groves to the standard of a practicing attorney. In Nuth, this Court noted that "suppression should not be granted unless there is a clear showing that the taxpayer was tricked or deceived." 605 F.2d at 234 (citing United States v. Allen, 522 F.2d 1229 (6th Cir.1975), cert. denied, 423 U.S. 1072 (1976)). This Court then found that the trial court's finding that because Nuth was "an attorney who practiced to some extent and [was] an experienced businessman, and that as such he must have been aware of the 'potential criminal aspects' of an audit" was not clearly erroneous. Id. The trial court in the present case did not draw any specific conclusions from its recitation of the facts in Nuth. Assuming that, as appellant argues, the court believed that Groves, like Nuth, "must have been aware of the 'potential criminal aspects' of an audit," we nonetheless do not find such a finding to be clearly erroneous. Nothing in Nuth suggests that Nuth was presumed to have knowledge because he was an attorney; in fact, Nuth only "practiced law to some extent." Further, this Court in Nuth looked at the totality of the circumstances in determining whether the taxpayer had been tricked or deceived. Groves' extensive experience as a certified public accountant and her experience in representing individual taxpayers in examinations of their returns by Internal Revenue agents suggest that she would be aware of the potential criminal aspects of an audit. Thus we do not find any such inference on the District Court's part to be clearly erroneous. Any finding by the District Court in this regard was, at any rate, superfluous, for having found that the government committed no fraud, deceit or trickery, the court need not have reached the issue of whether Groves and appellant were in fact under a misapprehension.
 
 
 36
 For the above reasons, we find that the District Court properly denied appellant's motion to quash the summonses. Accordingly, we AFFIRM the judgment of the District Court.
 
 
 
 [1]
 This section sets forth procedural requirements pertaining to the service of a summons
 
 
 [2]
 Appellant argues that the clearly erroneous standard is not the appropriate standard of review. He argues that this Court's decision in United States v. Weingarden, 473 F.2d 454 (6th Cir.1973), suggests that a de novo review is appropriate. Weingarden approved a trial court's determination that the issue of whether the sole purpose of a summons was criminal prosecution was a question of ultimate fact or a mixed question of law and fact. The Court thus found that the clearly erroneous standard was inappropriate in that case. This Court's decision in United States v. Nuth, 605 F.2d 229, 234 (6th Cir.1979), however, found the clearly erroneous standard to be appropriate in reviewing the factual determination that the taxpayer had not been deceived by the conduct of IRS agents regarding the nature of an IRS inquiry
 
 
 [3]
 Section 981 of the Manual provides in part:
 When the examiner discovers a firm indication of fraud, the examination should be immediately suspended without disclosing to the taxpayer or representative the reason for the action.