**UNITED STATES of America and Rich-
ard C. Pfeiffer, Special Agent, Inter-
nal Revenue Service, Petitioners,**

**v.**

**Berry L. KESSLER, Secretary, Brittany
Builders, Inc., Respondent.**

**Civ. No. 71–286.**

United States District Court,
S. D. Ohio, E. D.

Feb. 16, 1972.

W. Robinson Watters, Asst. U. S. Atty., Columbus, Ohio, Ralph A. Romano, Tax Division, Dept. of Justice, Washington, D. C., for plaintiffs.

Joseph F. Dillon, Detroit, Mich., Robert A. Bell, Columbus, Ohio, for defendants.

## OPINION AND ORDER

CARL B. RUBIN, District Judge.

This matter comes before the Court on the petition of the United States and Special Agent Richard C. Pfeiffer of the Internal Revenue Service (IRS) for the judicial enforcement of an IRS summons issued pursuant to § 7602 of the Internal Revenue Code of 1954, 26 U.S.C. § 7602.[1] The summons, dated July 13, 1971, directed Berry Kessler, as Secretary of Brittany Builders, Inc. and custodian of its records, to appear before Pfeiffer on July 23, 1971, and produce various business records of the corporation for the years 1967 to 1969. The IRS asserts that these records are necessary to the investigation now pending into the tax liabilities of Dr. Carl and Sandra Neufeld. The Neufelds are not parties before the Court in this present action. When Kessler refused to produce the requested documents, the IRS sought judicial enforcement of its summons under the provisions of §§ 7402(b) and 7604 (a), IRC of 1954, 28 U.S.C. §§ 7402(b), 7604(a).[2]

Kessler opposed this Court's order to show cause why he should not obey the IRS summons on the ground that it violated his Fifth Amendment rights; that it was issued for an improper purpose under § 7602; and that the IRS was guilty of bad faith in the conduct of its investigation. To allow these contentions to be fully aired, the Court has held one hearing in open court and two in chambers. In addition, by Order of this Court dated December 3, 1971, respondent was allowed to depose Special Agent Pfeiffer. Able counsel for both sides have also submitted extensive and lengthy briefs to assist the Court in making its determination.

The facts of this matter as they have been developed before this Court can be briefly summarized as follows: During 1971 revenue agents of IRS's Cincinnati, Ohio, office began an audit of the Neu-

---

1. Section 7602, Internal Revenue Code of 1954, provides in material part as follows:
   "§ 7602. Examination of books and witnesses
   "For the purpose of ascertaining the correctness of any return, making a return where none has been made, determining the liability of any person for any internal revenue tax . . . or collecting any such liability, the Secretary or his delegate is authorized—
   "(1) To examine any books, papers, records, or other data which may be relevant or material to such inquiry;
   "(2) To summon the person liable for tax . . . or any person having possession, custody, or care of books of account containing entries relating to the business of the person liable for tax . . . or any other person the Secretary or his delegate may deem proper, to appear before the Secretary or his delegate at a time and place named in the summons and to produce such books, papers, records, or other data, and to give such testimony, under oath, as may be relevant or material to such inquiry; and

   "(3) To take such testimony of the person concerned, under oath, as may be relevant or material to such inquiry."

2. These nearly identical provisions provide as follows:
   "§ 7402. Jurisdiction of district courts
   . . . . .
   "(b) To enforce summons.—If any person is summoned under the internal revenue laws to appear, to testify, or to produce books, papers, or other data, the district court of the United States for the district in which such person resides or may be found shall have jurisdiction by appropriate process to compel such attendance, testimony, or production of books, papers, or other data."
   "§ 7604. Enforcement of summons
   "(a) Jurisdiction of district court.—If any person is summoned under the internal revenue laws to appear, to testify, or to produce books, papers, records, or other data, the United States district court for the district in which such person resides or is found shall have jurisdiction by appropriate process to compel such attendance, testimony, or production of books, papers, records, or other data."

felds' 1967 and 1968 income tax returns. As the investigation developed, particular interest of the agents focused on a claimed $35,000.00 deduction in 1967, under § 1244 of the Code, arising out of a transaction with Brittany Builders, Inc. Other deductions were claimed for investments in other corporate entities including Mercury Builders, Inc., Esquire Builders, Inc. and Esquire Investments. Berry Kessler, an accountant by profession, was involved with each of these corporate entities. He was also the preparer of the Neufelds' income tax returns for the tax years in question. As the investigation unfolded the IRS requested various corporate records of Mercury Builders, Inc., Esquire Builders, Inc., and Esquire Investments and these were supplied either by Dr. Neufeld or by Kessler. On April 15, 1971, Special Agent Pfeiffer entered the case with particular interest in looking into the criminal fraud aspects of the transactions under investigation. When he requested corporate records of Brittany Builders which were in the possession of Kessler, its Secretary, Kessler refused to produce them. The § 7602 summons was issued and the petition herein filed soon thereafter.

There has been a good deal of confusion during the proceedings before the Court concerning the real parties to this case. It is now, however, abundantly clear that the IRS summons was directed to Kessler in his corporate capacity as Secretary of Brittany Builders and required him to produce the papers and records solely of the corporation.[3] The summons did not require Kessler to produce his personal records, nor was it directed against him personally. Kessler is a respondent in the case at bar only in his capacity as Secretary of Brittany Builders, Inc. and as the individual who has continued to hold its records.

Although the parties have not done so, we believe that for the sake of clarity the voluminous matters here presented can be reframed and recast in the form of a simple precise question: Does Kessler have standing, in his individual capacity, to intervene in the summary proceedings now pending before this Court?

Kessler, of course, argues that he does and asserts two grounds in support of his intervention. He first argues that Brittany Builders, Inc. was never a lawful corporation under Ohio law. Consequently, any attempt to require production of purported corporate records in his possession, through summary proceedings, can only be a sham and a subterfuge designed to obtain his personal records in violation of the Fifth Amendment. Secondly, Kessler argues that under the facts of this case the IRS summons was issued for an improper purpose and in bad faith.

The government naturally contests both of Kessler's contentions. They argue that Brittany Builders, Inc. was a lawfully constituted corporation, with corporate records distinct from Kessler's personal files and is a proper recipient of a § 7602 summons. The government further argues that under the recent case law and especially in light of Donaldson v. United States, 400 U.S. 517, 91 S.Ct. 534, 27 L.Ed.2d 580 (1971), the summons was properly issued and is entitled to judicial enforcement.

### Corporate Status of Brittany Builders

Kessler's first contention must be answered by reference to Ohio law and specifically to the general corporations statute of Ohio. Ohio Revised Code, Section 1701.04, provides in part as follows:

(A) Any person, simply or jointly with others, and without regard to residence, domicile, or state of incorporation, may form a corporation by

---

3. The original summons as issued by Special Agent Pfeiffer required Kessler to produce the records of Brittany Builders and to give testimony. This testimonial requirement of the summons has since been deleted and is no longer demanded by the petitioners. See, Deposition of Richard C. Pfeiffer, p. 23.

signing and filing with the secretary of state articles of incorporation

. . .

\* &ast; &ast; &ast; &ast; &ast;

(D) The legal existence of the corporation shall begin upon the filing of the articles and unless the articles otherwise provide, its period of existence shall be perpetual.

The articles of incorporation of Brittany Builders, Inc. were filed in the customary form on May 26, 1967, and were recorded by Ted Brown, Secretary of State of Ohio, on Roll B507, Frame 110 of the Records of Incorporation. An examination of the articles of incorporation by this Court indicates that Brittany Builders fully complied with the requirements set forth in Section 1701.04 O.R.C.

■ Respondent Kessler acknowledges the filing of articles pursuant to Section 1701.04 O.R.C. but notes that Brittany Builders, Inc. failed to comply with Chapter 1707: Securities of the Ohio Revised Code, and that therefore the corporation never commenced an actual existence. Chapter 1707, O.R.C., is intended for the standard "Blue Sky" protection of innocent purchasers of stock. The remedies for a violation of this Chapter are to be found in Sections 1707.39, .40, .41, .42 and .43 which deal with procedures for correcting a failure to register and file, as required, with the Ohio Division of Securities; with issuer liabilities; and with the remedies of a good faith purchaser in the event of an unlawful sale. There is no suggestion to be found anywhere in Chapter 1707 that a corporation which fails to proceed in accordance with its terms thereby terminates or forfeits its corporate existence. While it may very well be that the incorporators or the officers of Brittany Builders, Inc. have violated one or more of the provisions of Chapter 1707, O.R.C., such violations are curable in civil damages and are perhaps punishable criminally but they most surely do not cause a corporation to forfeit or lose its corporate nature. Kessler's argument on this ground is totally lacking in merit and therefore Brittany Builders, Inc. did not lose its corporate status through its alleged violations of Ohio's Blue Sky law, Chapter 1707, O.R.C.

The Court also takes note of the following matters of corporate and public record: Following the filing of the articles and incorporation, the shareholders and officers of Brittany Builders, Inc., including Berry Kessler, conducted themselves in a fashion consistent with corporate existence. They obtained a line of credit and opened a checking account at the Huntington National Bank, Columbus, Ohio; they held directors' meetings and executed corporate resolutions; they bought and sold property and obtained loans on real estate.

Of utmost significance attesting to the corporate existence of Brittany Builders, Inc. is a warranty deed from Brittany Builders, Inc. to Willie D. and Elizabeth S. Ziegler which is recorded in Deed Book 2955, page 288, of the records of Franklin County, Ohio. This warranty deed is signed by Berry L. Kessler, Secretary, and acknowledged as follows:

Before me, a Notary Public in and for said County, *personally came the above named Grantor, and* [sic] *Ohio corporation, by Berry L. Kessler, its Secretary,* and acknowledged the execution of the foregoing deed to be its and his voluntary act and deed [emphasis supplied].

In view of these facts, the Court must give due weight to the plain and simple words of Section 1701.04(D). Accordingly, we hold that the legal existence of Brittany Builders, Inc., an Ohio corporation, began on May 26, 1967, when the requisite articles of incorporation were filed with the Secretary of State of Ohio. We further hold that the corporate records and papers of Brittany Builders, Inc. for the years 1967 through 1969, now in possession of Berry L. Kessler, its Secretary, are legally distinct from Kessler's personal papers and can be properly made the subject of a § 7602 summons. Kessler's contentions

to the contrary are baseless and without persuasive legal foundation.

### Intervention and Good Faith

This then brings us to the merits of this case which must be analyzed in light of Donaldson v. United States, 400 U.S. 517, 91 S.Ct. 534, 27 L.Ed.2d 580 (1971). In *Donaldson, supra,* the IRS was investigating the income tax returns of Donaldson for the years 1964 through 1967. The Special Agent conducting that investigation issued a § 7602 summons against Donaldson's former employer, Acme Circus Operating Co. and its accountant, one Joseph J. Mercurio. The IRS sought through the summons to obtain most of Acme's records having to do with Donaldson. After Donaldson obtained a temporary restraining order preventing Acme and Mercurio from complying with the summons, the IRS sought judicial enforcement in the United States Court for the Middle District of Florida. The order to show cause ran against Acme and Mercurio only, both of whom were willing to comply but for the restraining order obtained by Donaldson. For this reason Donaldson sought to intervene in the District Court proceedings under Rule 24(a), Fed.R. Civ.P. The District Court denied Donaldson's motion to intervene and this was affirmed by the Fifth Circuit. United States v. Mercurio, 418 F.2d 1213 (5th Cir. 1969).

The Supreme Court unanimously affirmed the Circuit Court's ruling. The Court, per Justice Blackmun, noted that what the IRS was seeking was " . . . the production of *Acme's* records and not the records of the *taxpayer.*" 400 U.S. at p. 523, 91 S.Ct. at p. 538. The Court then held, certain dicta in Reisman v. Caplin, 375 U.S. 440, 84 S.Ct. 508, 11 L.Ed.2d 459 (1964) notwithstanding, that an interested taxpayer does not have an absolute right to intervene in a summary enforcement proceeding under § 7402(b) or § 7604(a), even where the summons is used for an improper purpose or is directed to materials protected by an identifiable legal privilege. The Court did allow that the District Court possessed discretion and general equitable power to permit intervention when appropriate. The facts in *Donaldson,* however, were not such as to warrant the taxpayer's intervention. This was so because Donaldson did not have either a proprietary or "significantly protectable" interest in Acme's records sought by the IRS summons. The Court suggested that to the extent the taxpayer had a protectable interest, either by way of legal privilege or abuse of process, these Fifth Amendment issues could be asserted subsequently at trial. To decide otherwise, the Court noted, " . . . would unwarrantedly cast doubt upon and stultify the Services' every investigatory move." 400 U.S. at pp. 530–531, 91 S.Ct. at p. 542.

The Court then addressed itself to Donaldson's second contention: That a § 7602 summons may not be used in aid of an investigation " . . . that has the potentiality of resulting in a recommendation that a criminal prosecution be instituted against the taxpayer." 400 U.S. at p. 532, 91 S.Ct. at p. 543. It rejected this view on the grounds that it would " . . . thwart and defeat the appropriate investigatory powers . . . " that the Congress has conferred on the Secretary of the Treasury and his delegate, the Commission of Internal Revenue through § 7602, I.R.C. *Id.,* at p. 533, 91 S.Ct. at p. 544. The Court noted that at the time the IRS summonses were issued:

> Donaldson was not under indictment and, indeed, no recommendation had been made for his prosecution. That he might be indicted and prosecuted was only a possibility, no more and no less in his case than in the case of any other taxpayer whose income tax return is undergoing audit. Prosecution will necessarily depend on the result of that audit and on what the examination and investigation reveal. *Id.,* at p. 537, 91 S.Ct. at p. 544.

The Court refused to allow a presumption of criminal prosecution to arise from the entry of a Special Agent into

the case.[4] Instead the Court established an objective test and held that ". . . under § 7602 an internal revenue summons may be issued in aid of an investigation if it is issued in good faith and prior to a recommendation for criminal prosecution." Id., at p. 536, 91 S.Ct. at p. 545.

It should be clear that Kessler's standing to intervene in the case at bar is even more remote and less appropriate than was Donaldson's. In *Donaldson* the taxpayer himself was under investigation by the IRS. In our case the IRS investigation is proceeding against the Neufelds. While this investigation might ultimately be broadened to include Kessler, at this time he is not a target of the IRS's inquiries. In *Donaldson*, the IRS summons to Acme sought the taxpayer's employment records and the Court still held that Donaldson had no protectable interest in these and that his intervention was not justified. In the case at bar the IRS is seeking the records of, as we have held above, a lawful Ohio corporation. While they are currently in the possession of Kessler, his protectable interest in them is marginal at best and in all likelihood non-existent.

Let us assume, *arguendo*, that the records of Brittany Builders, Inc., contain information that would implicate Kessler in activities illegal under the tax fraud laws. As we have seen, the mere potentiality that the IRS investigation into the Neufelds may result in a criminal proceeding being instituted against Kessler is not sufficient ground, under *Donaldson*, for quashing the § 7602 summons involved in this case. *Donaldson* requires that this Court give judicial enforcement to the summons so long as it was issued in good faith and prior to an IRS recommendation for criminal prosecution. The government has stipulated that there has been as yet no recommendation to institute criminal proceedings against anyone as a result of their investigation into the Neufelds. See, Petitioner's Brief, November 27, 1971, at pp. 3–4; Proceedings in Chambers, December 15, 1971, at pp. 43–44; Deposition of Richard C. Pfeiffer, p. 110.

Therefore, Kessler's reliance on United States v. Weingarden, 333 F.Supp. 474 (S.D.Mich. E.D. Nov. 12, 1971) and United States v. Billingsley, 331 F.Supp. 1091 (N.D.Okl.1971) is misplaced. In *Weingarden, supra*, an IRS Special Agent was conducting an investigation into the tax returns of two taxpayers. The taxpayers gave their records first to their accountant and subsequently to their attorney, Weingarden. A § 7602 was issued against Weingarden, directing him to produce the taxpayers' records before the Special Agent. He refused and the District Court refused to give judicial enforcement to the IRS summons. *Weingarden* is clearly distinguishable factually from the case at bar because the District Court's refusal to enforce the summons in that case was based upon testimony adduced at an evidentiary hearing which established that the Special Agent had recommended that criminal proceedings be instituted against the taxpayers.

*Billingsley, supra*, is equally inapposite. The procedural posture of that case was identical to the one at bar. However, undisputed evidence before the District Court in that case established

4. ". . . The fact that a full-scale tax fraud investigation is being made does not necessarily mean that prosecution ensues when tax liability becomes apparent.

Congress clearly has authorized the use of the summons in investigating what may prove to be criminal conduct . . . . There is no statutory suggestion for any meaningful line of distinction for civil as compared with criminal purposes, at the point of a special agent's appearance . . . To draw a line where a special agent appears would require the Service, in a situation of suspected but undetermined fraud, to forego either the use of the summons or the potentiality of an ultimate recommendation for prosecution. We refuse to draw that line and thus to stultify enforcement of federal law. See United States v. Kordel, 397 U.S. 1, 11, [90 S.Ct. 763, 25 L.Ed.2d 1] (1970)" 400 U.S. at pp. 535–536, 91 S.Ct. at p. 544 (footnote and some citations omitted).

that prior to the issuance of the § 7602 summons, the Special Agent in charge of the investigation had recommended that the taxpayer under investigation be prosecuted for income tax fraud.

Both *Weingarden* and *Billingsley* are completely consistent with the holding in *Donaldson* which prohibits the issuance of a § 7602 summons after there has been a recommendation for criminal prosecution. The taxpayers made the requisite showing on this point in the two above noted cases and the courts properly refused to give judicial enforcement to the invalid summons. Respondent Kessler has been unable to make said showing in the case at bar. Our decision to grant enforcement of the IRS summons is therefore easily reconcilable with both *Weingarden* and *Billingsley* and mandated by the holding of *Donaldson.*

██ In fact, our case more nearly resembles the situation that prevailed in United States v. Vey, 324 F.Supp. 552 (W.D.Pa.1971). In that case an IRS Special Agent was conducting an investigation into the income tax liabilities of one John S. LaRocca. In the course of his investigation, the Special Agent deemed it necessary to examine the records of North Star Block Company, Inc., in which the taxpayer owned a 60% interest. The treasurer of North Star refused to supply the requested records and refused to comply with a § 7602 summons. The District Court granted enforcement of the summons, citing *Donaldson,* and concluded:

> There is no dispute that criminal prosecutions have not been commenced against the respondent or North Star, nor at this time that such prosecution

is contemplated in the immediate future. At this time all that is sought is the right to examine North Star's records for the purpose of determining whether or not any possible civil or criminal liability exists. Such purpose is clearly within the scope of proper purpose for the use of an Internal Revenue summons. Donaldson v. United States, *supra.*

324 F.Supp. at pp. 553–554. We hereby agree with the holding in *Vey, supra,* and adopt it in its entirety. See, *accord,* United States v. Lyons, 442 F.2d 1144, 1145 (1st Cir. 1971); United States v. Newman, 441 F.2d 165, 170–173 (5th Cir. 1971); United States v. Troupe, 438 F.2d 117, 119 (8th Cir. 1971); United States v. Fender, 326 F.Supp. 788, 789 (W.D.N.C.1971). We therefore conclude that the intervention of Kessler on the theory of improper purpose is not warranted in this case.

Only the question of bad faith on the part of IRS remains for consideration before this Court.[5] In our opinion, Kessler has failed to demonstrate that that agency is engaged in a fishing expedition in regard to their investigation or that it is carrying out an harassment campaign against him. Instead, the Court is convinced that the investigation currently pending against the Neufelds is well within the broad latitude allowed the IRS by statute (26 U.S.C. § 7602, et seq.; § 7801(a)) and under the controlling case law. Donaldson v. United States, *supra,* 400 U.S. at pp. 533–536, 91 S.Ct. 534, 27 L.Ed.2d 580. It is further the opinion of this Court that Kessler has failed to sustain his burden of showing that the IRS has proceeded in bad faith through said investigation.[6]

5. Petitioner has argued that the Court need not reach this issue once the question of improper purpose is resolved against respondent. We do not agree. The holding of *Donaldson, supra,* is in the conjunctive. It allows for the enforcement of an IRS summons if it is ". . . issued in good faith and prior to a recommendation for criminal prosecution." 400 U.S. at p. 536, 91 S.Ct. at p. 545 [emphasis supplied]. Therefore the Court

feels it must go on to consider the bad faith allegations of respondent. See, United States v. Billingsley, *supra,* 331 F. Supp. at p. 1093 n. 3; United States v. Newman, *supra,* 441 F.2d at p. 171 n. 24.

6. For example, Kessler explores without much persuasiveness, the possibility that Pfeiffer is jealous of his apparent success, in Deposition of Richard C. Pfeiffer, pp. 4–5, 29–32. Respondent also places

The IRS has a right and a duty under the law to conduct investigations when it suspects that violations of the tax laws have occurred. Such investigations are in part, by their very nature, inquiries into the unknown. Under such circumstances there will be frequent forays into areas that may ultimately prove unproductive. Such efforts, however, do not constitute bad faith.

■ Bad faith, in the Court's opinion, must include at the very least evidence that the investigation of the Neufelds is a sham and fabrication; that the inquiry into the records of Brittany Builders, Inc. has no relevance to such investigation; and that this entire operation is a cover for what is really an unjustified and vexing investigation of Berry L. Kessler. Respondent Kessler has failed to adduce evidence sufficient to carry his heavy burden on these points.

■ Rather, in the issue at hand Kessler has been requested only as Secretary of a corporation and custodian of its records, to permit inspection of these records by a duly authorized special agent of the IRS. It is beyond question that the Neufelds claimed a substantial deduction arising out of a transaction with Brittany Builders, Inc. The IRS has satisfied its burden that it has a legitimate reason for examining Brittany Builders' corporate records. Such a legitimate reason is prima facie evidence of good faith and a heavy burden devolves upon respondent Kessler to prove the contrary. He has failed to do so.

Therefore this Court holds that the intervention of Berry L. Kessler into this proceeding is not appropriate under either of the two major rubrics of Donaldson v. United States, *supra*.

■ Respondent has raised several other defenses to the petition for enforcement herein but they may be disposed of summarily. Kessler contends that the § 7602 summons issued by the IRS against him as Secretary of Brittany Builders, Inc., violates his rights under the Fourth Amendment to the Constitution of the United States. This proposition is not well taken. Donaldson v. United States, *supra*, 400 U.S. at p. 522, 91 S.Ct. 534, 27 L.Ed.2d 580; First National Bank v. United States, 267 U.S. 576, 45 S.Ct. 231, 69 L.Ed. 796 (1925). Kessler has also raised a Fifth Amendment defense. As we have noted earlier, respondent does not have any identifiable privilege under the Fifth Amendment, or a proprietary interest in the documents sought, to resist the production of records belonging to Brittany Builders, Inc. Donaldson v. United States, *supra*, 400 U.S. at pp. 530–531, 91 S.Ct. 534; United States v. Widelski, 452 F.2d 1 (6th Cir., December 17, 1971).

The Court wishes to thank counsel who have materially assisted in this matter. Ralph A. Romano, Esq., for petitioner and Joseph F. Dillon, Esq., and Robert A. Bell, Esq., for respondent, have represented their clients' interests with exceptional tenacity and skill.

Accordingly, the Court finds that the respondent has not shown good cause for its non-compliance with the Internal Revenue Service summons issued by Special Agent Pfeiffer, directing the respondent to appear before said Special

significance in the fact that Pfeiffer has given him his constitutional warning. See, United States v. Leahey, 434 F.2d 7 (1st Cir. 1970) ; United States v. Heffner, 420 F.2d 809 (4th Cir. 1969). However, the Court does not view this as harassment or as raising a presumption, as respondent argues, that there is an investigation pending against Kessler personally. In light of Kessler's close relationship with the Neufelds (he is their accountant and preparer of their income tax returns), Pfeiffer was probably correct in putting

Kessler on notice concerning the investigation currently pending against the Neufelds. Kessler also contends, somewhat contradictorily, that Pfeiffer's warning did not include informing him of his right to counsel. Even assuming the truth of this contention, this Court finds that Kessler was not prejudiced as a result of this alleged omission. The records in question were not turned over to Pfeiffer and the Court, of course, notes that Kessler has since obtained able counsel.

Agent and produce the records and papers set forth in the summons.

Wherefore, the petition for the enforcement of the Internal Revenue Service summons herein, is hereby granted. The motion of Berry L. Kessler, individually, to intervene in these proceedings is hereby denied. Berry L. Kessler, Secretary of Brittany Builders, Inc., is hereby directed to appear before this Court within thirty (30) days from date of this Order, and make available from those materials held under seal by this Court, to petitioner herein, those books, records and papers required by the summons of July 13, 1971; provided that said Secretary of Brittany Builders, Inc., will not be required to give testimony in connection with said summons.

It is so ordered.