UNITED STATES of America and James G. Murphy, Special Agent, Internal Revenue Service, Petitioners-Appellees,

v.

Thomas B. JOSEPH, Respondent-Appellant.

Nos. 75–2508, 76–1289.

United States Court of Appeals, Sixth Circuit.

Argued April 14, 1977.

Decided Aug. 16, 1977.

Joseph W. Wolf, Jack A. Weinstein, Saginaw, Mich., for respondent.

Frederick S. Van Tiem, Asst. U. S. Atty., Detroit, Mich., Scott P. Crampton, Gilbert E. Andrews, Robert E. Lindsay, F. Arnold Heller, Tax Div. Dept. of Justice, Washington, D.C., for petitioners-appellees.

Before PHILLIPS, Chief Judge, and EDWARDS and PECK, Circuit Judges.

EDWARDS, Circuit Judge.

This is an appeal from an order entered by the United States District Court for the Eastern District of Michigan enforcing a summons issued against appellant, Thomas B. Joseph, an attorney, requiring him to produce certain corporate records belonging to a client and directing him to appear to give testimony pertaining to the tax liabilities of said client and his wife.

After several hearings before two different judges in the District Court, an order for enforcement of the summons was entered and an appeal was taken therefrom to this court. On said appeal this court remanded for further hearing, holding that the District Court had improperly limited appellant's cross-examination of the Internal Revenue Service Special Agent, who had initiated the summons, on the critical issue of good faith. Subsequent to said remand and hearing, District Judge Harvey entered still another order of enforcement which has now been obeyed to the extent that the corporate records required to be turned over have been surrendered. Compliance with the order, however, has not been completed in that Attorney Joseph has sought a stay of said order pending appeal and has not as yet been required to appear to testify.

In the background of this case are the following facts:

Special Agent Murphy testified that he had been assigned to make an investigation of the tax liabilities of Charles A. McNally and Gertrude B. McNally for the years 1969 through 1971. Prior thereto Charles A. McNally had been indicted on a charge of violating the Federal Gambling Conspiracy Statutes. Joseph stated that the corporate records sought by Murphy had been delivered to Joseph by McNally to enable him to

defend McNally in the gambling case. Joseph also claimed that the records were protected in his possession by the attorney/client privilege.

Appellant relies in his appeal in this case upon this court's opinion in *United States v. Henry*, 491 F.2d 702 (6th Cir. 1974). Appellant emphasizes the fact that Special Agent Murphy, at judicial hearings on enforcement of the summons, refused to give any guarantee that the information sought from the records and testimony would be limited to civil tax liability and not employed in any criminal tax prosecution or in the gambling prosecution.

Following remand, District Judge Harvey entered a Memorandum Opinion and Order saying as follows:

The Court having held an evidentiary hearing in this matter and having reviewed the sworn testimony of the witnesses finds the following:

Based on the background case development and investigation of Special Agent Murphy, the issuance of the summons in question was done as a necessary step in determining the tax liability of Mr. McNally. The discovery of corporate records held by respondent was necessary and relevant to the investigation of Mr. McNally's tax liability. The inquiry into the corporate records was justified and not a sham or a vexing fabrication. There was no "bad faith." See *United States v. Kessler*, 338 F.Supp. 420 [(S.D. Ohio 1972).[1]] The summons being issued in "good faith" was done in accordance with the law. Title 26, United States Code, Section 7602.

The Court finds the issuance of the summons to be in "good faith" for the actions of Agent Murphy were rationally based on the statements of third parties such as state law enforcement officials and confidential informants.

The issuance of the summons came only after Agent Murphy had checked the previous tax returns of Mr. McNally and inspected various public records and financial statements of banking institutions. Also, an estimated net worth of Mr. McNally was calculated by the IRS and this estimation showed a possible substantial tax liability.

Based on this background case development, the Court must conclude that the summons was only used to gain further relevant data on the tax liability of Mr. McNally.

The Court has reviewed in camera the contents of the informant file and finds that the materials contained therein fall within the informant privilege outlined in *Roviaro v. US*, 353 U.S. 53, 59, 60, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957) or is internal investigative memoranda which is not discoverable. Although the Court has considered the confidential materials when making its finding of "good faith," the Court believes that even without the privileged matter, there has been a sufficient showing on the record through the sworn testimony of the witnesses to support a finding of a "good faith" issuance of the summons in question.

Therefore, the prior opinions of the Court in this case are affirmed and the order of January 22, 1974 enforcing the IRS summons will stand and respondent shall comply with said order forthwith.

■ On consideration of the District Court records, the briefs, and the oral arguments in this case, we affirm the judgment of the District Court.

The factual holdings recited in the opinion above constitute sharp distinctions between this record and the record this court dealt with in *United States v. Henry, supra.* In *Henry* the District Judge said in granting the motion to quash the summons:

"[I]t is important to emphasize that while the cases herein cited dealt only with the pendency, possibility or · probability of criminal prosecution for tax violations, the case at bar has the added, and significant, feature of a pending criminal narcotics conspiracy case. It is the possibility of the interplay between the two that creates what the Court considers to be an invidious situation.

1. *Reversed on other grounds*, 474 F.2d 995 (6th Cir. 1973).

"As to the tax matter alone, it does not appear illogical to conclude that the purpose of the investigation is criminal prosecution only and that, therefore, *Reisman, supra,* [*Reisman v. Caplin,* 375 U.S. 440, 84 S.Ct. 508, 11 L.Ed.2d 459 (1964)] is controlling. The presence of a special agent does not, of course, per se establish that (*Donaldson, supra,* 400 U.S. 534, 535 [91 S.Ct. 544]) [*Donaldson v. United States,* 400 U.S. 517, 91 S.Ct. 534, 27 L.Ed.2d 580 (1971)]. The announced policy of the Strike Force to utilize Internal Revenue Code tools to pursue alleged narcotic traffickers and the statement of plaintiffs at the hearing that they were interested in ascertaining 'net worth' (a term generally associated with criminal prosecution) casts some doubt on the bona fides of plaintiffs. Nor was there any offer at the time of the hearing or subsequent thereto to dispel this doubt. Unanswered it sustains the Respondent's burden."

*United States v. Henry, supra* at 703–04.

Where the District Court in this case has found good faith, in *Henry* the District Court found the summons was issued in bad faith.

Section 7602 of the Internal Revenue Code of 1954, 26 U.S.C. § 7602 (1970), provides as follows:

§ 7602. Examination of books and witnesses

For the purpose of ascertaining the correctness of any return, making a return where none has been made, determining the liability of any person for any internal revenue tax or the liability at law or in equity of any transferee or fiduciary of any person in respect of any internal revenue tax, or collecting any such liability, the Secretary or his delegate is authorized—

(1) To examine any books, papers, records, or other data which may be relevant or material to such inquiry;

(2) To summon the person liable for tax or required to perform the act, or any officer or employee of such person, or any person having possession, custody, or care of books of account containing entries relating to the business of the person liable for tax or required to perform the act, or any other person the Secretary or his delegate may deem proper, to appear before the Secretary or his delegate at a time and place named in the summons and to produce such books, papers, records, or other data, and to give such testimony, under oath, as may be relevant or material to such inquiry; and

(3) To take such testimony of the person concerned, under oath, as may be relevant or material to such inquiry.

This statute on its face and by interpretation provides for administrative summonses to aid the Internal Revenue Service in its civil tax collection work. It has been interpreted by the United States Supreme Court in two cases generally favorable to the government. *Donaldson v. United States,* 400 U.S. 517, 91 S.Ct. 534, 27 L.Ed.2d 580 (1971), and *Couch v. United States,* 409 U.S. 322, 93 S.Ct. 611, 34 L.Ed.2d 548 (1973). The fundamental holdings of *Donaldson* appear to be the following:

The argument centers in the above-mentioned dictum in *Riesman,* 375 U.S., at 449 [84 S.Ct. [508] at 513]:

"[T]he witness may challenge the summons on any appropriate ground. This would include, as the circuits have held, the defenses that the material is sought for the improper purpose of obtaining evidence for use in a criminal prosecution, *Boren v. Tucker,* 239 F.2d 767, 772–773 (9th Cir. 1956), as well as that it is protected by the attorney-client privilege . . . ."

We note initially that, despite the dictum, the courts of appeals in opinions issued since *Reisman* was decided, appear uniformly to approve the use of a summons in an investigation that is likely to lead to civil liability as well as to criminal prosecution. The use of a summons also has been approved, even where it is alleged that its purpose is to uncover crime, if no criminal prosecution as yet has been instituted. On the other hand, it has

been said, usually citing *Reisman*, that where the sole objective of the investigation is to obtain evidence for use in a criminal prosecution, the purpose is not a legitimate one and enforcement may be denied. This, of course, would likely be the case where a criminal prosecution has been instituted and is pending at the time of issuance of the summons.

*Donaldson v. United States, supra*, 400 U.S. at 532–33, 91 S.Ct. at 543. (Footnotes omitted.)

In its concluding sentence, the Court said:

We hold that under § 7602 an internal revenue summons may be issued in aid of an investigation if it is issued in good faith and prior to a recommendation for criminal prosecution.

*Id.* at 536, 91 S.Ct. at 545.

In *Couch v. United States, supra,* the Supreme Court dealt with an IRS summons directed at an accountant requiring the accountant to produce certain business records which a client had given him for preparation of her tax returns. Relevant language from *Couch* includes the following paragraph in which the Court noted that the Fifth Amendment was a right personal to an accused:

In the case before us the ingredient of personal compulsion against an accused is lacking. The summons and the order of the District Court enforcing it are directed against the accountant. He, not the taxpayer, is the only one compelled to do anything. And the accountant makes no claim that he may tend to be incriminated by the production. Inquisitorial pressure or coercion against a potentially accused person, compelling her, against her will, to utter self-condemning words or produce incriminating documents is absent. In the present case, no "shadow of testimonial compulsion upon or enforced communication by the accused" is involved. *Schmerber v. California*, 384 U.S. 757, 765, [86 S.Ct. 1826, 1832, 16 L.Ed.2d 908] (1966).

*Couch v. United States, supra,* 409 U.S. at 329, 93 S.Ct. at 616. (Footnote omitted.)

It is, of course, appellant's argument in our instant case that a "prosecution" had begun in that McNally had been indicted for gambling conspiracy and that, hence, "the material [was] sought for the improper purpose of obtaining evidence for use in a criminal prosecution." *See Reisman v. Caplin*, 375 U.S. 440, 449, 84 S.Ct. 508, 513 (1964).

There are, however, two answers to this argument. First, we have already noted above the District Court findings which show that this summons was issued in "good faith" and not "solely" in the interest of a criminal prosecution. Second, the nature of the records sought here offers another valid distinction between those sought in *Henry* and even those sought in *Couch*. In this case only corporate records are sought and they are specified in exact detail. The courts have long held that a corporation may not claim a privilege against self-incrimination, nor may a corporate officer refuse to produce records of the corporation on Fifth Amendment grounds. *Wilson v. United States*, 221 U.S. 361, 382–85, 31 S.Ct. 538, 55 L.Ed. 771 (1911); *United States v. Peter*, 479 F.2d 147, 149 (6th Cir. 1973). *See also United States v. Held*, 435 F.2d 1361, 1365–66 (6th Cir. 1970), *cert. denied*, 401 U.S. 1010, 91 S.Ct. 1255, 28 L.Ed.2d 545 (1971).

The Supreme Court has also extended the "collective entity" principle of the *Wilson* case to business partnerships. *See Bellis v. United States*, 417 U.S. 85, 88–89, 94 S.Ct. 2179, 40 L.Ed.2d 678 (1974). And in *Fisher v. United States*, 425 U.S. 391, 96 S.Ct. 1569, 48 L.Ed.2d 39 (1976), the Court even more recently has required enforcement of summonses directed to an attorney for records of his client's account. The Court said:

Here, the taxpayers are compelled to do no more than was the taxpayer in *Couch*. The taxpayers' Fifth Amendment privilege is therefore not violated by enforcement of the summonses directed toward their attorneys. This is true whether or not the Amendment would have barred a subpoena directing the taxpayer to produce the documents while they were in his hands.

The fact that the attorneys are *agents* of the taxpayers does not change this result. *Couch* held as much, since the accountant there was also the taxpayer's agent, and in this respect reflected a longstanding view. In *Hale v. Henkel*, 201 U.S. 43, 69–70, [26 S.Ct. 370, 377, 50 L.Ed. 652, 663] (1906), the Court said that the privilege "was never intended to permit [a person] to plead the fact that some third person might be incriminated by his testimony, even though he were the agent of such person . . . [T]he Amendment is limited to a person who shall be compelled in any criminal case to be a witness against *himself*." (Emphasis in original.) "It is extortion of information from the accused himself that offends our sense of justice." *Couch v. United States, supra*, [409 U.S.] at 328, [93 S.Ct. [611] at 616, 34 L.Ed.2d [548] at 554]. Agent or no, the lawyer is not the taxpayer. The taxpayer is the "accused," and nothing is being extorted from him. *Fisher v. United States, supra*, 425 U.S. at 396–97, 96 S.Ct. at 1574.

For these reasons we reiterate our holding that the District Court did not err in enforcing the summons as to the corporate records.

Appellant also argues that the summons seeks to invade the attorney/client privilege. As to the records, as pointed out above, their very nature rebuts this argument. *See Fisher v. United States, supra*, 425 U.S. at 402–05, 96 S.Ct. 1569. But appellant likewise contends that the order for him to appear and answer questions may involve invasion of his attorney/client privilege. We think this argument is premature. Since there has been no such appearance and the order itself does not specify what questions will be asked, objections on the attorney/client privilege ground may be made and dealt with by the District Court when, as, and if such invasion is attempted.

The judgment of the District Court is affirmed.