Steve **ASMAR and Metro Institutional Food Service, Inc., a Michigan corporation, jointly and severally, Plaintiffs,**

v.

**UNITED STATES of America, DEPARTMENT OF TREASURY, INTERNAL REVENUE SERVICE, Defendant.**

No. 87–CV–0471–DT.

United States District Court, E.D. Michigan, S.D.

Oct. 26, 1987.

Lawrence J. Stockler, Southfield, Mich., for plaintiffs.

Ellen G. Ritteman, Asst. U.S. Atty., Detroit, Mich., for defendant.

## MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

WOODS, District Judge.

During the summer of 1986, the Detroit Free Press and the Detroit News published articles indicating that Harold D. Murdock, member of the Detroit Board of Education, received bribery payments in 1984 from Metro Institutional Food Service, Inc. (Metro) in exchange for the award of a milk contract with the Detroit School System. The purported basis of these stories was a series of telephone conversations recorded without the authorization or knowledge of the participants. Steve Asmar, president of Metro, was a party to some of those conversations.

Based on the newspaper articles and a source, which the government contends is "other than the newspaper articles," Mary Beth Gravel, a special agent in the Criminal Investigation Division of the Internal Revenue Service (IRS), began an investigation of Harold Murdock's tax liabilities. On February 2, 1987, Gravel served a summons on Asmar, in his capacity as president of Metro, requiring Asmar to give testimony and produce documents of Metro for the years 1981 through 1985.

Plaintiffs Asmar and Metro brought this action to quash the summons, contending that the IRS violated 18 U.S.C. § 2518(10)(a) and § 2515 by commencing an investigation based on information unlawfully derived from an illegal wiretap.

Defendant brings this motion to dismiss, asserting that this Court lacks subject matter jurisdiction because the suit is barred by sovereign immunity and that the complaint fails to state a claim upon which relief can be granted. This Court is without subject matter jurisdiction; the United States has not waived its sovereign immunity. Accordingly, the viability of plaintiff's claim cannot be determined.

The United States can be sued only to the extent to which it has waived its sovereign immunity. *United States v. Orleans*, 425 U.S. 807, 814, 96 S.Ct. 1971, 1976, 48 L.Ed.2d 390 (1976); *Feyers v. United States*, 749 F.2d 1222, 1225 (6th Cir.1984); *Ecclesiastical Order of the Ism of Am, Inc. v. Chasin*, 653 F.Supp. 1200, 1206 (E.D.Mich.1986). A waiver of sovereign immunity cannot be implied but must be unequivocally expressed by Congress. *United States v. Mitchell*, 445 U.S. 535, 538, 100 S.Ct. 1349, 1351, 63 L.Ed.2d 607 (1980); *Johnson v. Hubbard*, 698 F.2d 286, 290 (6th Cir.1983); *Jahn v. Regan*, 584 F.Supp. 399, 406 (E.D.Mich.1984). Only two statutes conceivably could provide this Court with jurisdiction over the United States in this action to quash an IRS sum-

mons, 26 U.S.C. § 7609 and 18 U.S.C. §§ 2510–2521.

■ Plaintiffs cannot quash the IRS summons under 26 U.S.C. § 7609(b)(2)(A) because the statute only applies to actions seeking to quash summons served upon third-party recordkeepers. *Younglove v. United States*, 581 F.Supp. 37 (E.D.Mich. 1984), and neither Asmar nor Metro fall within the statutory definition of third-party recordkeeper, 26 U.S.C. § 7609(a)(3).

■ The federal wiretap statute, 18 U.S. C. §§ 2510–2521, also does not provide federal courts with jurisdiction to quash an IRS summons allegedly based upon evidence derived from an illegal wiretap. Although 18 U.S.C. § 2520 creates a private cause of action as plaintiffs contend, *see Boddie v. American Broadcasting Cos.*, 731 F.2d 333, 336 (6th Cir.1984), it does not create a cause of action against the government. Section 2520 reads in part:

> Except as provided in section 2511(2)(a)(ii), any person whose wire, oral or electronic communication is intercepted, disclosed, or intentionally used in violation of this chapter may in a civil action recover from the person or entity which engaged in that violation such relief as may be appropriate.

Conceivably, the reference to entity could imply that the government has consented to suit, however, such an interpretation runs counter to the Supreme Court's tendency to require a specific statutory waiver of sovereign immunity before holding that the United States has consented to suit.[1]

In *Affiliated Ute Citizens v. United States*, 406 U.S. 128, 92 S.Ct. 1456, 31 L.Ed.2d 741 (1972), the Supreme Court analyzed the scope of the government's waiver of sovereign immunity under the General Allotment Act, 25 U.S.C. § 345. That statute contemplates two types of suits, suits seeking an allotment and suits concerning an allotment after it is acquired. The Court held that sovereign immunity was waived only in the former type of suit because the United States was mentioned in that class, but "as to the latter class of cases, no mention of the United States' participation is made." *United States v. Mottaz*, 476 U.S. 834, 842–849, 106 S.Ct. 2224, 2229–33, 90 L.Ed.2d 841 (1986). Because § 2520 of the wiretap statute does not specifically state that the private cause of action can be asserted against the government, plaintiffs' suit against the United States under 18 U.S.C. § 2520 is barred by sovereign immunity.

■ Plaintiffs also assert that § 2518(10)(a) provides the requisite waiver of immunity. That section reads:

> Any aggrieved person in any trial, hearing, or proceeding in or before any court, department, officer, agency, regulatory body, or other authority of the United States, a State, or a political subdivision thereof, may move to suppress the contents of any wire or oral communication intercepted pursuant to this chapter, or evidence derived therefrom, on the grounds that—
>
> (i) the communication was unlawfully intercepted;
>
> (ii) the order of authorization or approval under which it was intercepted is insufficient on its face; or
>
> (iii) the interception was not made in conformity with the order of authorization or approval.

---

1. *Compare United States v. Mitchell*, 463 U.S. 206, 103 S.Ct. 2961, 77 L.Ed.2d 580 (1983)(language of the Tucker Act, 28 U.S.C. § 149, specifically grants the Court of Claims jurisdiction over the United States), *Block v. North Dakota*, 461 U.S. 273, 103 S.Ct. 1811, 75 L.Ed.2d 840 (1983) (sovereign immunity waived in Quiet Title Act, 28 U.S.C. § 2409a(a), because statute specifically refers to property in which the United States has an interest), *Lehman v. Nakshian*, 453 U.S. 156, 101 S.Ct. 2698, 69 L.Ed.2d 548 (1981) (1974 amendments to Age Discrimination in Employment Act, 29 U.S.C. § 633a, specifical-ly bring the federal government within the scope of the act), *and Canadian Aviator, Ltd. v. United States*, 324 U.S. 215, 65 S.Ct. 639, 89 L.Ed. 901 (1945) (Public Vessel Act of 1925, 43 Stat. 1112, specifically grants a cause of action against the United States) *with United States v. King*, 395 U.S. 1, 89 S.Ct. 1501, 23 L.Ed.2d 52 (1969) (neither the acts creating the Court of Claims, 10 stat. 612 and 12 stat. 765, nor the Declaratory Judgment Act, 28 U.S.C. § 2201, specifically grant the Court of Claims jurisdiction to issue declaratory judgments, therefore, the Court of Claims has no such jurisdiction).

Such motion shall be made before the trial, hearing, or proceeding unless there was no opportunity to make such motion or the person was not aware of the grounds of the motion. If the motion is granted, the contents of the intercepted wire or oral communication, or evidence derived therefrom, shall be treated as having been obtained in violation of this chapter. The judge, upon the filing of such motion by the aggrieved person, may in his discretion make available to the aggrieved person or his counsel for inspection such portions of the intercepted communication or evidence derived therefrom as the judge determines to be in the interests of justice.

Section 2518(10)(a) refers specifically to the filing of a motion. It does not refer to a cause of action and, therefore, cannot be invoked to assert that the government has waived its sovereign immunity.

■ Finally, plaintiffs contend that 18 U.S.C. § 2515 waives sovereign immunity because the statute is directed at organs of government. The statute reads:

Whenever any wire or oral communication has been intercepted, no part of the contents of such communication and no evidence derived therefrom may be received in evidence in any trial hearing, or other proceeding in or before any court, grand jury, department, officer, agency, regulatory body, legislative committee, or other authority of the United States, a State or a political subdivision thereof if the disclosure of the information would be in violation of this chapter.

This statute forbids the use of information derived from an illegal wiretap. It does not grant a plaintiff a cause of action against the United States.

Plaintiffs have offered no other basis for jurisdiction over the federal government. They do contend, however, that it would be inefficient to dismiss the case because it will be refiled by the Secretary in the district court upon plaintiffs' refusal to produce the requested documents at the IRS examination. 26 U.S.C. § 7604. This is not necessarily the case. The Secretary may agree with plaintiffs that the informa-

tion is protected by 18 U.S.C. § 2515 and dismiss the summons. Thus, the assertion of a 18 U.S.C. § 2515 protection is premature since there has been no appearance pursuant to the summons. *United States v. Joseph*, 560 F.2d 742, 747 (6th Cir.1977) (assertion of attorney/client privilege is premature when there has been no appearance at the IRS examination and it is unclear what questions will be asked); *see also United States v. Garrett*, 571 F.2d 1323, 1329 (5th Cir.1978) (proper method to determine if IRS summons is harassing is to have the IRS seek enforcement of the summons in district court).

This Court is without jurisdiction to quash the IRS summons because sovereign immunity has not been waived. Defendant's motion to dismiss is granted.

So ordered.