**COLUMBUS SURGICAL SERVICES, INC., et al., Petitioners,**

v.

**UNITED STATES of America, Respondent.**

**UNITED STATES of America, Petitioner,**

v.

**Francis E. BARNES, et al., Respondents.**

**Nos. C2–94–467, C2–94–808.**

United States District Court, S.D. Ohio, Eastern Division.

Dec. 27, 1994.

Terrence Austin Grady, Columbus, OH, for petitioners.

Jeffrey Paul Hopkins, U.S. Atty's Office, Columbus, OH, for respondent.

## OPINION AND ORDER

GEORGE C. SMITH, District Judge.

These consolidated cases present a single issue for decision: should the Court quash or decline to enforce summonses issued by the Internal Revenue Service to taxpayers Francis E. Barnes, Gloria Barnes, and Columbus Surgical Services, Inc., and to their accountant, Matthew Yuskewich. In the first-filed case, case No. C2–94–467, the taxpayers requested that the summonses be quashed. In the second-filed case, case No. C2–94–808, the United States requested that they be enforced. For the following reasons, the Court concludes that the United States is entitled to summary enforcement of the sum-

monses, and that no evidentiary hearing is required prior to the issuance of an order for enforcement.

## I.

In general, these actions raise the question of whether the Court can decline to enforce summonses issued by the Internal Revenue Service where the taxpayers claim not that the summonses do not relate to an ongoing audit, but that the Service's motivation for conducting the audit is either to harass the taxpayers or to retaliate against them for their conduct in connection with a previous audit. Although the Court will discuss the specific facts of this case only after it has articulated the correct standard for review of a request for summary enforcement, it is helpful to recite the taxpayers' allegations in order to put the case in proper prospective.

According to the taxpayers, the Service conducted an extensive audit of their tax returns from 1977 through 1986. That audit was completed in February of 1994. Initially, the Service demanded that the taxpayers pay a substantial sum of money to resolve the questions raised by the audit, but ultimately the taxpayers received a refund of in excess of $100,000.

At some point in that process, the Service decided to audit Columbus Surgical's 1990 tax return. According to the taxpayers, that audit was expanded to include 1991 and 1992 in an arbitrary fashion, and the Service then chose to audit the Francis E. Barnes' 1990 return because he had refused to provide it to the agent while she was conducting her audit of the corporate tax return. The taxpayers have generally characterized the Service's conduct with respect to the ongoing audits as a "flagrant and unchecked abuse of the administrative investigatory process," Complaint at ¶ 11, and a "systematic pattern of harassment." Complaint at ¶ 23. They also assert that the agents assigned to the audit are, by virtue of the taxpayers' history with the Service, predisposed to be "antagonistic, belligerent and suspicious." Complaint at ¶ 12. They contend that the Service has violated oral agreements reached with respect to the scope of the examination of the 1991 and 1992 tax returns, and the assigning

of a different agent to conduct those audits. Overall, the taxpayers assert that these claims are sufficient evidence of bad faith on the part of the Service to preclude enforcement of the summonses which were issued for various records pertinent to the audits being conducted. The question raised is whether the taxpayers have met their burden of demonstrating that summary enforcement of the summonses should not be ordered.

## II.

### A. *General Principles*

■ Any discussion of the general principles applicable to enforcement of an IRS summons must begin with *United States v. Powell*, 379 U.S. 48, 85 S.Ct. 248, 13 L.Ed.2d 112 (1964). Powell holds that in order for the IRS to obtain enforcement of a summons, it must demonstrate the following:

1. That the investigation to which the summons relates is being conducted for a legitimate purpose;

2. That the information requested is related to that purpose;

3. That the IRS does not already have the requested information; and

4. That all necessary administrative prerequisites to the issuance of a summons have occurred.

■ The procedures to be followed in an action for enforcement of a summons are set forth in *United States v. Will*, 671 F.2d 963 (6th Cir.1982). First, the Service must establish a *prima facie* case for summons enforcement by addressing the four *Powell* factors. To do so, it need only submit affidavits establishing the existence of those factors. Once it does so, the burden shifts to the taxpayer to demonstrate that enforcement of the summons would constitute an abuse of the Court's process. Because the proceeding is designed to be summary in nature, the Court has the power to limit discovery and to limit evidentiary proceedings to an extent not normally permitted in a civil action. To that end, the Court may require the taxpayer to make a preliminary and substantial showing of abuse before permitting any discovery or before allowing the action to proceed to an evidentiary hearing.

*Will* also sets forth some specific examples of what may constitute an abuse of the Court's process. For example, the summons might have been issued solely to pressure the taxpayer into compromising a collateral matter. It might also be an improper attempt to obtain information for use in a criminal prosecution. However, as recognized in *Powell*, an improper purpose may also be "any other purpose reflecting on the [lack of] good faith of the particular investigation." *United States v. Powell*, 379 U.S. at 58, 85 S.Ct. at 255; *see also Pickel v. United States*, 746 F.2d 176, 185 (3d Cir.1984) (a summons will not be enforced if "the taxpayer can prove that the summons is issued solely to harass him . . . .").

■ Courts have used different phrases to describe the burden placed upon a taxpayer to demonstrate that the Service has acted in bad faith in pursuing a civil tax collection matter that has led to the issuance of a summons. For example, the Third Circuit has suggested that there must be evidence that the Service's actions constitute the "institutional abandonment of a civil collection purpose . . . ." *United States v. Garden State National Bank*, 607 F.2d 61, 69 (3d Cir.1979). This Court has stated that the taxpayer must come forward with "evidence that the investigation . . . is a sham and fabrication." *United States v. Kessler*, 338 F.Supp. 420, 427 (S.D. Ohio 1972), *rev'd on other grounds*, 474 F.2d 995 (6th Cir.1973). Although the Court is, by statute, directly interposed between the Service and the taxpayer in order to avoid an abuse of the Service's investigative powers, the taxpayers' burden has been deliberately set at a high level in order to insure that the vast majority of summons enforcement proceedings are conducted expeditiously. For the same reason, the Service need only show that some legitimate purpose exists for the issuance of the summons, and not that there is probable cause to believe that the information requested will lead to the discovery of tax deficiencies. *United States v. White*, 853 F.2d 107 (2d Cir.1988), *cert. dismissed*, 493 U.S. 5, 110 S.Ct. 273, 107 L.Ed.2d 6 (1989). The issuance of summonses is a critical discovery tool to permit the Service to investigate potential

violations of the tax laws, and the breadth of the relevancy test, requiring proof only of some legitimate purpose, would be thwarted if every taxpayer asserting a claim of harassment or bad faith could delay the enforcement of a summons and obtain discovery and a trial on that claim. *Cf. United States v. Arthur Young & Co.*, 465 U.S. 805, 104 S.Ct. 1495, 79 L.Ed.2d 826 (1984). It is with these general principles in mind that the precise issue presented in these cases will be decided.

### B. *Evidence of Bad Faith*

■ As noted in more general terms above, the taxpayers' claim of bad faith is essentially that the Service has elected to conduct its most recent audits in retaliation either for the taxpayers' refusal to compromise an earlier audit, or their refusal to provide the auditor with a copy of the Barnes' 1990 personal income tax return when that document was requested in connection with the audit of Columbus Surgical. As a result, they assert that they are being forced to undergo the burden of having 16 consecutive years of their business operations audited. They also contend that the most recent audits are being conducted in violation of agreements previously made with representatives of the Service. Because, in case No. C2–94–808, the Court made an initial determination, upon review of the petition for enforcement, that the four *Powell* factors have been satisfied, the taxpayers bear the burden not simply of alleging bad faith, but producing specific evidence of bad faith sufficient to justify more protracted proceedings in this case, including discovery with respect to their claims, and, ultimately, an evidentiary hearing to determine whether the Service's actions have been taken in bad faith. Thus, the Court must scrutinize carefully their allegations to determine exactly what facts alleged by the taxpayers to be true are supported by competent evidence.

The taxpayers have made only two evidentiary submissions: the declaration of Matthew Yuskewich, the taxpayer's accountant, and the declaration of Francis E. Barnes. The Court will review each declaration in detail to determine if there are facts contained therein which constitute substantial evidence of bad faith on the part of the Service.

Mr. Yuskewich represented Dr. Barnes in the audit of his 1986, 1987, 1988, and 1989 personal and corporate tax returns, and was involved to some extent in the audit of the 1977 through 1985 personal returns. The personal audit resulted in a refund being issued to the Barneses in the approximate amount of $114,000.00 Yuskewich's declaration does not address the outcome of the corporate audit.

In February, 1993, Dr. Barnes was notified that Columbus Surgical's 1990 tax return would be examined. The examination was assigned to Agent Caroline New, who, according to her declaration, was not involved in any of the previous audits.

According to Yuskewich's declaration, Agent New, despite being advised that Yuskewich was representing the corporation for purposes of the audit, appeared without advance notice at Dr. Barnes' office, demanded to speak with Dr. Barnes directly, and insisted that the audit either take place in Dr. Barnes' medical office or summonses would issue. Despite what Yuskewich describes as a "biased, threatening and confrontational tone" on Agent New's part, this issue was resolved and the audit continued.

Yuskewich asserts that Agent New asked for "multi-leveled layers of substantiation for each and every transaction" relating to her audit, and appeared not to understand certain matters, such as the treatment of life insurance premiums by the corporation. As a result, the taxpayers spent time producing documents and providing explanations for matters that had previously been gone over in the audit conducted by other agents.

During the corporate audit, Agent New requested a copy of Dr. Barnes' 1990 personal income tax return. Dr. Barnes, contending that this return was unrelated to the correctness of the corporate tax return (although he is a 100% shareholder of the corporation), refused to produce the return. Sometime thereafter, and, in Yuskewich's view, directly related to that refusal, Agent New notified the Barneses that Columbus

Surgical's 1990 personal income tax returns and Columbus Surgical's corporate tax return would be audited. Yuskewich concedes that he was permitted to meet with Agent New and her supervisor concerning these various audits, and that he was given explanations as to why the audits had been ordered. The corporate audit was based upon a computer-generated "flag," and the personal audit was related to transactions between the corporation and Dr. Barnes as well as adjustments which would have to be made to Dr. Barnes' return as a result of the disallowance of travel and entertainment expenses deducted by the corporation. At the meeting, the taxpayers also expressed their frustration with the manner in which Agent New was conducting the audit, and the personal audits were then assigned to another agent. The parties appear to agree that there were some adjustments made during that audit, and that these issues are now pending in the United States Tax Court.

According to Yuskewich, despite the agreement that Agent New would not be involved in the Barnes' personal tax audits, she initiated the audit of their 1991 and 1992 tax returns on March 9, 1994 by making a document request. Approximately a month later, she made a second document request, and then on April 29, 1994 and May 2, 1994, issued the summonses which are the subject of this action. Yuskewich asserts that, in connection with these audits, Agent New continues to request multiple layers of documentation, and that she has not limited the audits to areas which were of concern with respect to the 1990 personal tax return.

Dr. Barnes' declaration tracks Yuskewich's declaration in large part. The only additional facts having possible bearing on this case are that the Service has also chosen to conduct audits of the 1991 and 1992 tax returns of two other corporations in which Dr. Barnes is involved, and that audit notices have also been issued to his ex-partner, his secretary, and his son.

In support of its position, the Service has filed declarations from Agent New and her supervisor, Group Manager Joseph Gerardi. Gerardi disagrees with the taxpayers' view of Agent New's professionalism and competen-

cy. He also disputes the assertion that some agreement was made which would have prevented Agent New to be assigned to audits other than the 1990 personal audit. Additionally, he states that no agreement was made to limit the examination of the 1991 or 1992 personal returns to matters which appeared to be of concern with respect to the 1990 return. Both his declaration and Agent New's declaration state that the documents requested pursuant to the summonses are related to the audits which are under way, a matter which the taxpayers have not directly disputed, and Agent New's declaration identifies some documents which are now in her possession as a result of summonses issued to other entities.

It is the Court's view that the facts recited above, although they paint a picture of a taxpayer who has been put to a significant amount of expense in complying with requests for information and defending his tax returns against IRS audits, do not rise to the level of a showing of bad faith, and do not warrant the holding of an evidentiary hearing on that claim. It appears to be undisputed that the summonses call for the production of information relevant to the audits which are now under way, so that the summonses themselves would appear to have been issued for a legitimate purpose. Further, the taxpayers have not directly refuted the fact that the 1991 corporate audit was triggered by a computer-generated notice, or that proposed adjustments to the corporation's 1990 return had an impact on Dr. Barnes' personal return for that year. In fact, it appears that after the audit of his 1990 personal return was completed by a different agent, adjustments were made which led to litigation. To the extent that the same matters occurred in 1991 and 1992, the Service's decision to audit the personal returns for those years would appear to be reasonable, or at least not so arbitrary and unreasonable as to rise to the level of bad faith.

The thrust of the taxpayers' declarations are not so much that the audits are being conducted, but that they are being conducted by an agent whose professionalism and competence are suspect, and whose ap-

proach to the audits makes them more expensive and time consuming than they rightfully should be. A taxpayers' disagreement with the manner in which an investigation is being conducted is not, without more, evidence of bad faith. *Cf. United States v. Michaud,* 907 F.2d 750, 753 (7th Cir.1990) (*en banc*) (a request that the taxpayers appear at a police station to be fingerprinted in connection with a tax audit is not harassment). Nor is the threatening or belligerent attitude of the agent conducting the audit evidence of bad faith. "The real issue presented is not whether the taxpayer perceived the Agent's actions as threats, but whether there is a legitimate purpose for the investigation." *United States v. Texas Heart Institute,* 755 F.2d 469, 479 (5th Cir.1985).

In this case, it would appear that there is substantial room for improvement in the lines of communication and in the relationship between the taxpayers and the Service with respect to the ongoing audits. That, by itself, is not a sufficient ground for the Court to quash summonses which have been issued for a legitimate purpose, and which relate to audits which are being conducted with at least a reasonable possibility that the audits will lead to the correction of matters contained on the returns being audited. Without addressing whether there may be other remedies available to the taxpayers which would guard them against unprofessional or tortious conduct on the part of an agent conducting an audit, the Court strongly believes that declining to enforce summonses which are facially valid under *United States v. Powell,* 379 U.S. 48, 85 S.Ct. 248, 13 L.Ed.2d 112 (1964), is not, on these facts, an appropriate remedy. Taking the record as a whole, the Court concludes that the taxpayers have not met their burden of showing by specific evidence that the underlying purpose of the audits is merely harassment or bad faith, or that the Service has engaged in an institutional abandonment of its tax collection efforts. That being the case, the petition of the taxpayers to quash the summonses will be denied, and the petition of the United States to enforce the summonses will be granted. The only caveat the Court would add is that the parties should work cooperatively to insure that only those documents not currently in the possession of the Service are produced in response to the summonses.

### III.

Based upon the foregoing, the petition of the United States of America, filed in case No. C2–94–808, to enforce Internal Revenue summonses is GRANTED. Respondents Matthew Yuskewich, Francis E. Barnes, and Gloria Barnes shall respond to those summonses at a time and place to be reasonably determined by the United States, acting through the Internal Revenue Service. The Internal Revenue Service shall insure that it insists upon production of only those documents not already in its possession. The motion of the United States for summary denial of the petition to quash IRS summonses, filed in case No. C2–94–467, is GRANTED. The Clerk is directed to enter judgment in each action in favor of the United States.